John Francis DECHON, Appellant,

v.

Dorothy Adele DECHON, Appellee.

No. 08–94–00125–CV.

Court of Appeals of Texas,
El Paso.

Oct. 26, 1995.

Rehearing Overruled Dec. 6, 1995.

---

Don Studdard and Jeffrey T. Weikert, Studdard & Melby, P.C., El Paso, for Appellant.

C. Jeff Minor, Semko & Minor, P.C., El Paso, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is an enforcement and clarification suit from a property settlement agreement entered incident to a divorce granted in 1971. Appellee, Dorothy Adele Dechon ("Dorothy"), filed a motion in the trial court in 1993 seeking enforcement of the property settlement agreement and clarification of one of its provisions. Appellant, John Francis Dechon ("John"), contested personal jurisdiction through a special appearance. Hearing was had on Dorothy's special appearance which was overruled by the trial court. The cause was then tried to the bench and the trial court entered judgment granting all relief sought by Dorothy.

In Point of Error No. One, John complains that the trial court erred in overruling his special appearance as he is a resident and domiciliary of Nevada and therefore not amendable to process issued by a Texas Court. In his second point of error, John complains that the trial court exceeded its authority to enforce and clarify the parties' property settlement agreement by entering an order which impermissibly modifies and changes the division of the parties' military retirement benefits agreed to in their 1971 divorce decree. Alternatively, he argues that even if the trial court's interpretation of the parties' settlement agreement did not constitute an impermissible modification, that the evidence is legally and factually insufficient to support the trial court's findings that the parties intended to divide John's gross benefits as opposed to his net benefits. In his third and final point of error, John complains that the trial court erred by applying a ten-year statute of limitations rather than a two-year statute of limitations in its award of an arrearage judgment to Dorothy for sums due under the property settlement agreement, all in contravention of Section 3.70(c) of the Texas Family Code.[1] We affirm the judgment as modified.

### SUMMARY OF THE EVIDENCE

On November 4, 1971, the Court of Domestic Relations of El Paso County signed a final decree of divorce dissolving the marriage between John and Dorothy. The decree approved and incorporated a property settlement agreement executed by the parties pertaining to the division of their community estate, including the parties' military retirement benefits. The agreement states in relevant part:

### I.

[John] shall have and receive as his sole and separate property and estate the following:

.        .        .        .        .

d.   One-half of any benefits received by [John] of whatsoever kind or nature as a result of [John]'s service in the Armed Forces of the United States, [John] to see that [Dorothy] promptly and timely receives the other one-half. Ownership interest shall be fifty percent (50%) to each of the Parties as to whatever sum such benefit might be now or hereafter. Vouchers will be promptly provided upon request to verify the amount of benefits.

e.   One-half of any benefits received by [Dorothy] of whatsoever kind or nature as a result of [Dorothy]'s service in the Armed Forces of the United States of America.

.        .        .        .        .

### II.

[Dorothy] shall have and receive as her sole and separate property and estate the following:

.        .        .        .        .

d.   One-half of any benefits received by [Dorothy] of whatsoever kind or nature as a result of [Dorothy]'s service in the Armed Forces of the United States, [John] to credit such amount against payments to [Dorothy] as provided in Paragraph I.d herein. Ownership interest shall be fifty percent (50%) to each of the Parties as to

1.   All statutory references will be to the Texas Family Code unless otherwise noted.

whatever sum such benefit might be now or hereafter, vouchers to be promptly provided upon request to verify the amount of benefit.

In July 1977, John left El Paso and moved first to Louisiana and then to Las Vegas, Nevada. He has continued his residency and domicile in Nevada since 1989. John's last physical presence in Texas occurred in August 1977.

Between 1971 and 1981, John performed his obligations under the property settlement agreement. In 1981, however, John ceased payment of that portion of his military retirement benefit awarded Dorothy.[2] On March 30, 1993, Dorothy filed her First Amended Motion for Clarification of Prior Order and for Enforcement of the settlement agreement. Following service of citation, John filed a special appearance pursuant to TEX. R.CIV.P. 120a asserting that he was not amendable to process issued by a Texas court because he lacked sufficient minimum contacts with the State of Texas for the trial court to exercise personal jurisdiction; alternatively he argued that the trial court lacked personal jurisdiction because the jurisdictional requirements of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408 (Supp.Pamphlet 1995) (the "Act") were not satisfied under the facts of the case at bar.[3]

On August 20, 1993, the trial court conducted a hearing on John's special appearance and entered an order overruling the special appearance on October 1, 1993. John then filed his Answer to the Motion for Clarification of Prior Order and for Enforcement and reiterated his challenge to the trial court's exercise of *in personam* jurisdiction.

Prior to trial, Dorothy filed her Second Amended Motion for Clarification of Prior Order and for Enforcement (the "second amended motion"). Trial was had to the bench. The only factual issues presented were whether the property settlement agreement constituted an agreement to divide gross benefits or net benefits, and the issue of Dorothy's recovery of attorney's fees. The legal issues presented dealt with whether a two-year or ten-year statute of limitations applied to Dorothy's recovery of arrearages, and whether cost of living increases could be awarded.

The parties entered into various agreed stipulations relating to the amounts owed by John depending on the usage of net or gross benefits and the application of the two- or ten-year statute of limitations. The court heard evidence of the parties' intent regarding the division of benefits when they entered into the agreed property settlement. Ultimately, the trial court entered an order applying the ten-year statute of limitations and granting Dorothy her requested relief based upon John's gross benefits, awarding her a judgment in the sum of $106,020 plus prejudgment interest of $29,333.94, for a total judgment of $135,353.94. John duly requested and obtained findings of fact and conclusions of law from the trial court. From the order, John has perfected this appeal.

## PERSONAL JURISDICTION

Whether a trial court is vested with jurisdiction to adjudicate a cause is an issue

---

**2.** The timing of the cessation of payment coincides with *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), in which the United States Supreme Court determined that federal law concerning military retirement benefits preempts state community property laws. *McCarty* was abrogated by the passage of the Uniformed Services Former Spouses' Protection Act.

**3.** Section 1408(c)(4) provides: A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason

of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court. Compliance is required if modification of a previous divorce decree is sought, *Barrett v. Barrett*, 715 S.W.2d 110, 112 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), whereas Section 1408(c)(4) does not apply if clarification rather than modification is sought. *Dunn v. Dunn*, 708 S.W.2d 20, 22 (Tex.App.—Dallas 1986, no writ).

of law. While the factual findings of the trial court are binding upon an appellate court if supported by sufficient evidence, its conclusions of law are not binding. Instead, we are free to draw our own legal conclusions. *County of El Paso v. Ortega,* 847 S.W.2d 436 (Tex.App.—El Paso 1993, no writ); *Muller v. Nelson, Sherrod & Carter,* 563 S.W.2d 697 (Tex.Civ.App.—Fort Worth 1978, no writ). Moreover, a trial court's conclusions of law are always reviewable de novo. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ A trial court has inherent power to clarify or enforce its previously entered decree. *Spradley v. Hutchison,* 787 S.W.2d 214 (Tex.App.—Fort Worth 1990, writ denied); TEX.FAM.CODE ANN. § 3.70 (Vernon 1993). Such jurisdiction encompasses both subject-matter jurisdiction to adjudicate the dispute and personal jurisdiction over the parties originally affected by the decree. TEX.FAM.CODE ANN. § 3.70(a). Furthermore, it is established law in Texas that a trial court may have jurisdiction over a party as to one issue and lack jurisdiction as to another. *In the Interest of S.A.V. and K.E.V.,* 837 S.W.2d 80, 83–84 (Tex.1992) (holding that court may have jurisdiction over child custody and visitation yet not have jurisdiction over support and visitation expenses).

■ The record reflects that the first amended motion sought an order which, whether intentional or inadvertent, omitted the offset from John's payment obligation equal to one-half of the benefits received by Dorothy with regard to her own military service. As such, the first amended motion apparently sought a modification rather than a clarification of the original property settlement agreement.[4] At the time of the hear-

ing on John's special appearance, the trial court lacked both subject-matter jurisdiction and personal jurisdiction over John for purposes of Dorothy's motion for clarification. 10 U.S.C.A. § 1408(c)(4). Nevertheless, the trial court did obtain both subject-matter jurisdiction and personal jurisdiction over John to *enforce* the original divorce decree and property settlement agreement. TEX. FAM.CODE ANN. § 3.70(a). Therefore, in light of John's generic special appearance which contested the trial court's jurisdiction as to "the entire proceeding," rather than contesting jurisdiction as to the modification only, we find that the trial court was correct in overruling John's special appearance.[5] Any error as to jurisdiction was ultimately cured through the timely filing of Dorothy's second amended petition, which reinserted the previously omitted offset. Accordingly, at the time of the entry of judgment, the trial court possessed jurisdiction as to both the enforcement and clarification actions. Point of Error No. One is overruled.

## CLARIFICATION NOT TANTAMOUNT TO MODIFICATION

■ The first sub-part of John's second point of error contends that the trial court exceeded its authority by modifying the terms of the original property settlement agreement. Enforcement of the division of property awarded by a divorce decree is governed by Section 3.71 which provides in relevant part as follows:

(a) [A] court may not amend, modify, alter, or change the division of property *made or approved in the decree of divorce* or ánnulment. Further orders may be entered to enforce the division, but these orders shall be limited to orders in aid of or in clarification of the

---

4. Because we conclude that the trial court's ruling on the special appearance is proper, we need not decide the issue of whether Dorothy's first amended petition did in fact seek an impermissible modification of the original settlement agreement.

5. Rule 120a of the Texas Rules of Civil Procedure provides that a special appearance may be made as to an entire proceeding or as to any severable

claim involved therein. In a Rule 120a special appearance, the non-resident defendant has the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). Because the trial court could exercise jurisdiction for purposes of enforcement, John failed to negate all bases of personal jurisdiction.

prior order. The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed. [Emphasis added].

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property *made or approved in a final decree of divorce* or annulment is beyond the power of the divorce court to enter and is unenforceable. [Emphasis added].

TEX.FAM.CODE ANN. § 3.71(a) and (b). We note at the outset that a property settlement agreement, although incorporated into a final decree of divorce, is treated as a contract and its legal force and its meaning are governed by the law of contracts, not by the law of judgments. *McGoodwin v. McGoodwin*, 671 S.W.2d 880 (Tex.1984). If a contract is unambiguous, the courts will give effect to the intention of the parties as expressed in the agreement. *City of Pinehurst v. Spooner Addition Water Co.* 432 S.W.2d 515, 518 (Tex.1968). A contract is ambiguous only if there is uncertainty as to which of two meanings is correct. *Kurtz v. Jackson*, 859 S.W.2d 609, 611 (Tex.App.—Houston [1st Dist.] 1993, no writ). If there is but one reasonable interpretation of the contract, it is unambiguous. *Id.* If an ambiguity exists, however, contract law provides that the property settlement agreement may be reformed to correct the mutual mistake of the parties or to reflect the true intent of the parties. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986). We also note that as demonstrated by the highlighted portion of the statute above, the remedy of clarification applies not only to property divisions specifically set forth in the decree but to those divisions which are merely approved and incorporated by reference in the decree. Thus, we conclude that a clarification proceeding may be utilized to seek reformation of the underlying property settlement agreement.

Orders for enforcement are limited to orders in aid or clarification of the prior order. *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex.App.—El Paso 1993, writ denied); TEX. FAM.CODE ANN. § 3.71(a). Such orders may more precisely specify the manner of carrying out the property division previously ordered so long as the substantive division of the property is not altered. *Pierce*, 850 S.W.2d at 679. Section 3.72(b) provides that a clarification order may only be made upon a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. *Id.* Here, the trial court made specific fact findings that the prior order was not specific enough to be entitled to enforcement. That finding is not challenged on appeal.

John argues that the order cannot be construed as a reformation of the underlying contract because Dorothy failed to plead for reformation, and that the clarification constitutes an alteration in the substantive division of property such that the order is void. We disagree with both arguments.

Neither the property settlement agreement nor the divorce decree attempted to define "benefits" as it is utilized in the settlement agreement. The term is thus capable of construction as referencing gross benefits or net benefits. To rectify the difficulty, Dorothy needed not only to determine the contractual ambiguity but also to clarify the decree which had incorporated the agreement. The precise language of the statute entitles her to do both in a clarification proceeding. Consequently, Dorothy moved the trial court to "construe and clarify" the term "benefits" and to enforce the provisions of the decree.[6] As such, her motion for clarification and enforcement sought an interpretation of the contract as written and a clarification of the divorce decree incorporating it.

John correctly states that although Section 3.71 permits the trial court to enter an order of clarification, it specifies that the court may

---

**6.** Dorothy also requested that the trial court enter an order providing for direct payment of her interest in the military retirement benefits in compliance with the Act.

not alter or change the substantive division of property. We are thus called upon to determine whether the order clarifying "benefits" to mean "gross benefits" constitutes an alteration in the substantive division.[7]

The predecessor to the enforcement provisions found in Subchapter D of the Family Code is the case of *Ex parte McKinley*, 578 S.W.2d 437 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). In conjunction with the award of the parties' homestead to the ex-wife, she had been ordered to execute a promissory note to her former husband and a deed of trust securing the note. In return, the former husband had been ordered to execute a special warranty deed conveying his interest in the property to her. When she failed to execute the promissory note and deed of trust following his execution of the special warranty deed, he filed a motion for contempt. Although the trial court denied the contempt motion, it ordered the ex-wife to execute and deliver to her former husband by a date certain a real estate lien note and deed of trust in the form attached to the order. When she failed to comply, she was held in contempt and incarcerated until she complied with the order of the court. In its opinion on her application for writ of habeas corpus, the court of appeals noted that the divorce decree sufficiently set forth the material terms of the note and deed of trust to be executed, and that the subsequent order entered by the trial court in aid of its decree merely set forth with particularity the form of the note and deed of trust to be executed by the ex-wife, and the date and time on which the documents were to be delivered. The court then held that the trial court was authorized to issue this order "in aid and clarification of its prior decree and for the purpose of effectuating the terms of the decree."

Subchapter D of Chapter 3 of Title I of the Family Code became effective September 1, 1983 and provided a statutory procedure for clarification and enforcement of final decrees of divorce in much the same manner as that established in *McKinley*. The Legislature expressly addressed the issue of retroactive application to decrees entered prior to its effective date:

(b) Subchapter D of Chapter 3, Family Code, as added by this Act applies to the enforcement of a decree of divorce or annulment made by a Texas court before or after the effective date of this Act.

Acts 1983, 68th Leg., R.S., ch. 424 § 13, effective Sept. 1983. Thus, Subchapter D applies to the 1971 decree dissolving the marriage between the Dechons.

The implementation of the statutory amendments was muddied by the Supreme Court opinion in *McGehee v. Epley*, 661 S.W.2d 924 (Tex.1983), which dealt with a trial court's clarification order entered prior to the effective date of Subchapter D, and addressed the trial court's authority prior to Subchapter D to clarify and enforce prior decrees of divorce. In *McGehee*, a 1973 divorce decree had awarded the ex-wife [Epley] one-half of all retirement benefits due and owing the ex-husband [McGehee] for his services in the United States Air Force. When McGehee filed an action to partition Epley's civil service retirement benefits, Epley filed a cross-action seeking a clarification of the award to her of the Air Force retirement benefits. The trial court entered a clarification order which ordered McGehee to pay one-half of his gross retirement benefits. The court of appeals affirmed, holding that the order had not modified the judgment but merely provided for enforcement. The Supreme Court, in an opinion dated October 19, 1983, one month after the effective date of Subchapter D, reversed the lower courts with no reference to Subchapter D whatsoever. Specifically, the Court held that the

---

7. It should be noted that this result is not precluded by the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) due to the fact that the division of gross benefits was accomplished through the property settlement agreement and was not a court ordered division of gross benefits as proscribed by *Mansell*. Furthermore, *Mansell* is not to be applied retroactively. *Berry v. Berry*, 786 S.W.2d 672 (Tex. 1990); *Elliott v. Elliott*, 797 S.W.2d 388 (Tex. App.—Austin 1990, no writ). Accordingly, we find *Mansell* and its progeny inapplicable to the fact of the case at bar.

order, as a matter of law, constituted more than a mere clarification since it affirmatively imposed an obligation to pay where no obligation had previously existed. Secondly, the order required McGehee to pay one-half of his gross benefits, whereas the original decree *arguably* required payment of only one-half of his net benefits. The Court concluded that these were impermissible substantive changes in the decree. John relies upon *McGehee* as controlling in the instant cause.

Suffice it to say that the appellate opinions issuing since *McGehee* have been all across the board as to what is a permissible clarification and what constitutes an impermissible alteration in the substantive division of property. Some of these decisions have created nightmarish results which have sent shockwaves through the family law bar. *See Head v. Head*, 739 S.W.2d 635 (Tex.App.—Beaumont 1987, writ denied); *Fox v. Fox*, 720 S.W.2d 880 (Tex.App.—Beaumont 1986, no writ). We thus address the proper construction of *McGehee* in light of Subchapter D.

It is apparent that the result in *McGehee* would have been different had the trial court's order been entered after the effective date of Subchapter D. It is clear that the original decree awarded Epley 50 percent of the retirement benefits. Certainly orders requiring payment to her by McGehee does not effect the actual division of property set forth in the decree. It merely insures that Epley would receive what the court had awarded to her, and this is consistent with the spirit of Subchapter D. As to the clarification concerning the meaning of "benefits," we note that usage of the term unmodified by "gross" or "net" renders the division of property unenforceable. If the court could not clarify "benefits" to mean "gross benefits" without altering the substantive division of property, then conversely, the court could not clarify "benefits" to mean "net benefits" without equally altering the substantive division of property. Thus, neither John nor Dorothy had the statutory ability to clarify their respective rights and obligations with regard to the retirement benefits. The ambiguity presents precisely the situation the

clarification statutes were designed to correct. The Code Construction Act, Tex. Gov't.Code Ann. § 311.021 (Vernon 1988), provides that in enacting a statute, it is presumed that the entire statute is intended to be effective and that a just and reasonable result is intended. Section 311.023 provides that in construing a statute, a court may consider the object sought to be attained, circumstances under which the statute was enacted, and the consequences of a particular construction.

As an example, a common error in the drafting of orders and agreements dividing marital property is the absence of language ordering a party to act or refrain from acting. Absent that specific magic language, an order is not capable of enforcement by contempt. *Ex parte Snow*, 677 S.W.2d 147, 149 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding); *Ex parte Nash*, 595 S.W.2d 571, 572 (Tex.Civ.App.—San Antonio 1979, orig. proceeding). Although *McGehee* indicates that ordering a spouse to pay where no prior obligation existed amounted to a substantive change in the decree, the subsequent statutory scheme for enforcement of property divisions is pointless if the court lacks the ability to clarify the order so as to render it capable of enforcement through contempt. Similarly, if the property settlement agreement is ambiguous, and if the clarification statute permits the trial court to clarify a division of property effectuated through either a court-ordered division or an agreement incident to divorce, and if the trial court resolves the ambiguity by determining the intent of the parties and clarifies the division in accordance with the intent of the parties, then we fail to see how the clarification order has impermissibly altered the substantive division of property. The reality is that no court could even determine what the substantive division of property was until the ambiguity is resolved. Once clarified, the order then becomes enforceable. Thus, we do not view Subchapter D as preventing the type of clarification which occurred below, and this portion of Point of Error No. Two is overruled.

### SUFFICIENCY OF THE EVIDENCE

The second sub-part of Dorothy's second point of error challenges the legal and factual

**959**

sufficiency of the evidence to support the trial court's finding that the parties intended the term "benefits," as it was used in the property settlement agreement, to refer to gross rather than net benefits. The crux of Dorothy's argument goes to the trial court's finding of fact number eight which states that:

> Pursuant to the [property] Settlement Agreement, the parties intended to divide the gross amount of benefit each party would receive by virtue of their respective service in the United States military.

In considering a "no evidence" or legal insufficiency point, we consider only the evidence which tends to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden*, 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Chandler v. Chandler*, 842 S.W.2d 829, 832–33 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the trial court. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner*, 840 S.W.2d at 136; *Chandler*, 842 S.W.2d at 833. It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (Tex.1951). Where there is conflicting evidence, the jury's verdict on such matters is generally

regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner*, 840 S.W.2d at 136; *Chandler*, 842 S.W.2d at 833. In a non-jury case, a trial court's findings of fact and conclusions of law have the same force and effect as a jury verdict on special issues, *Sebesta v. Daniels*, 812 S.W.2d 641 (Tex. App.—Houston [14th Dist.] 1991, writ denied), and are reviewable for legal and factual sufficiency by the same standards applied to jury answers to special issues. *Id.* at 644, *Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 744–45 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

Dorothy testified that she understood the property settlement agreement to contemplate the division of gross as opposed to net benefits and although the settlement agreement did not specify gross benefits, that was the verbal understanding between the parties at the time they entered into the agreement. We find this to constitute more than a scintilla of evidence in support of the trial court's finding and therefore overrule Dorothy's legal sufficiency point.

Upon cross-examination, Dorothy admitted that the property settlement agreement did not in fact provide for division of either gross or net benefits and that she may have misconstrued the agreement. Nevertheless, she assumed it to mean "gross." John testified that he understood and intended that the agreement provide only for the division of net benefits, because he could not pay Dorothy money which he had not in fact received. It is not surprising that in this litigation, which erupted more than twenty years after the entry of the divorce, the only available testimony amounted to nothing more than a swearing match between the parties as to the intent of the agreement. Upon such conflicting evidence, we are unwilling in light of the absence of any guidance in the agreement or decree itself to disregard the trial court's resolution of this issue and therefore overrule Dorothy's factual insufficiency point. Point of Error No. Two is overruled in its entirety.

### STATUTE OF LIMITATIONS

Lastly, in his third point of error, John challenges the trial court's application of the ten-year statute of limitations prescribed for revival and enforcement of judgments found in Articles 5532 and 3773 of the Texas Revised Civil Statutes, rather than the two-year statute of limitations contained in Section 3.70 of the Texas Family Code applicable to enforcement actions on divorce decrees. Section 3.70 provides in relevant part that:

> After rendition of a decree of divorce or annulment, the court retains the power to enforce the property division *made under Section 3.63 of this code....* A motion to enforce the division of future property not in existence at the time of the original decree must be filed within a period of two years after the right to the property matures or accrues or after the decree becomes final, whichever is the later, or the suit is barred. [Emphasis added].

TEX.FAM.CODE ANN. 3.70(c).

John therefore contends that Section 3.70 precludes Dorothy from recovering for payments outside this two-year window and therefore limits her recovery for arrearages to $23,319 (based on net benefits).

██ We note that the peculiarities of agreements incident to divorce and the final decrees incorporating them provide a party with a wide variety of remedies. In some instances, a suit for breach of contract is appropriate, particularly in the child support arena, such as where the parties contractually agree that one of the parents will provide for a college education. Typical enforcement remedies such as contempt are useless in such situations and recovery may be obtained only through suit on the contract inasmuch as the court cannot enforce by contempt that which it has no authority to order. Since a court cannot order support for a non-disabled child past the age of majority, agreements for on-going support past that age are not enforceable by contempt. *Lambourn v. Lambourn,* 787 S.W.2d 431, 432 (Tex.App.—Houston [14th Dist.] 1990, writ denied). A

similar result occurs with contractual alimony obligations. *Thomas v. Thomas,* 902 S.W.2d 621 (Tex.App.—Austin 1995, writ requested). Child support is more likely to be recovered through contempt actions rather than contract actions, although there are a number of instances in which the downward modification of support has led to a breach of contract action by the obligee against the obligor to recover the contractual support lost as a result of the modification ordered by the court. *Woodall v. Woodall,* 837 S.W.2d 856, 860 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Hill v. Hill,* 819 S.W.2d 570, 571 (Tex. App.—Dallas 1991, writ denied).

To further complicate matters, a litigant has a wide variety of remedies available through formal enforcement proceedings, contempt being the most frequently considered. *See* Section 3.76. Other remedies authorized in Subchapter D include orders requiring delivery of specific property awarded, including an award of an existing sum of money or its equivalent (Section 3.73); a money judgment for damages arising from the failure to comply with an order requiring delivery of specific property (Section 3.74[a]); a money judgment for the amount of unpaid payments, including future retirement benefits, to which the movant is entitled (Section 3.74(b); Section 3.75); and clarification (Section 3.71; Section 3.72). The issue squarely presented is the extent to which the two-year statute of limitations imposed on "motions to enforce" applies to these different remedies. Unfortunately, the existing appellate decisions are conflicting at best. John cites *Gonzales v. Gonzales,* 728 S.W.2d 446, 447 (Tex.App.—San Antonio 1987, no writ) in which the Court determined that the limitations period in Section 3.70 applies to all provisions of Subchapter D and therefore held the plaintiff's suit for enforcement and clarification was barred. He also cites us to *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex.1985) which held Section 3.70 applicable to contempt actions filed pursuant to Section 3.76. *See also, Burton v. Burton,* 734 S.W.2d 727 (Tex.App.—Waco 1987, no writ) (two-year statute does not apply to

contempt proceedings). Dorothy, on the other hand, relies upon *Pettitt v. Pettitt,* 704 S.W.2d 921 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In *Pettitt,* the appellate court expressly found that since Section 3.70 specifically references only those divisions of property made under Section 3.63 and did not specifically address property settlement agreements under Section 3.631, the limitations period contained therein did not apply and instead utilized the ten-year statute of limitations for the enforcement of judgments.[8] Of critical importance to that decision, however, was the fact that the property settlement agreement provided Mrs. Pettitt with an interest in Mr. Pettitt's separate property. Noting that Section 3.63 contemplates a division of the "estate of the parties" and that the Supreme Court has defined the "estate of the parties" as referencing only the community estate, [*Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex. 1977)] the Court held that the division of property could not be construed as a division made under Section 3.63 because the Court had no power or authority to divest Mr. Pettitt of his separate property. It is thus distinguishable.

In the instant cause, the parties entered into an agreement incident to divorce in compliance with Section 3.631. The final decree, however, provides as follows:

> The court further finds that the parties herein accumulated certain property and debts during their marriage and that the parties have entered into an agreement, filed in this cause, whereby all their property and debts have been settled;
>
> It is therefore ORDERED, ADJUDGED and DECREED by the Court that the settlement of the parties herein filed is found to be fair and equitable and that the same be and is hereby approved in its entirety and included in this judgment, the same as if copied herein in full, and shall be and is the Order of the Court.

We thus find that the division of property was accomplished both through an agreement incident to divorce pursuant to Section 3.631 and a court-ordered division arising out of Section 3.63. We also conclude that Section 3.70(c) makes little sense unless it applies to all methods of enforcement under Subchapter D. We decline to carve exceptions depending on the method of enforcement sought. Having said that, we note that while clarification is a remedy, it is in fact a prerequisite to enforcement rather than a method of enforcement.[9] A period of several years may pass before a litigant recognizes the necessity for a clarification proceeding. If, for example, John had paid half of his gross benefits to Dorothy for a period of five years, and then paid her only on the basis of his net benefits for three years, and then ceased making payments altogether, what statute of limitations should apply? Clearly a clarification would be necessary from the standpoint of establishing the parties' respec-

---

8. Section 3.63(a) provides that: "In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Section 3.631 provides:

(a) To promote amicable settlement of disputes on the divorce or annulment of a marriage, the parties may enter into a written agreement concerning the division of all property and liabilities of the parties and maintenance of either of them. The agreement may be revised or repudiated prior to rendition of the divorce or annulment unless it is binding under some other rule of law.

(b) In a proceeding for divorce of annulment, the terms of the agreement are binding on the court unless it finds that the agreement is not just and right. If the court finds the agreement is not just and right, the court may request the parties to submit a revised agreement.

(c) If the court approves the agreement, the court may set forth the agreement in full or incorporate it by reference in the decree of divorce or annulment.

9. We also note that during the last legislative session, Section 3.711 was added which confers upon the trial court continuing jurisdiction to enter orders necessary to amend or correct qualified domestic relations orders in order to ensure they are qualified and enforceable. We liken this provision to Section 3.72 clarification orders, as they both constitute prerequisites to enforcement rather than methods of enforcement.

tive rights and obligations due to the blatant ambiguity presented. Accordingly, we apply no statute of limitations to the clarification procedure itself. It does apply, however, to the enforcement process once clarification is obtained.[10] Accordingly, we apply the two year statute of limitations to Dorothy's motion to enforce. Point of Error No. Three is sustained.

## CONCLUSION

We sustain Point of Error No. Three and modify the judgment to provide that Dorothy recover $27,275,[11] together with prejudgment

interest at 6 percent for a total judgment of $31,169.19. As modified, the judgment is affirmed.

10. Complicating the enforcement process which follows on the heels of a clarification proceeding is Section 3.72(c), which provides that there may be no retroactive effect accorded a clarification order. Specifically, a reasonable time shall be provided for compliance before the order may be enforced by contempt *or in another manner*. This provision appears to arise directly from *Ex parte McKinley*, wherein the clarification was necessary in order to specify precisely the documents Mrs. McKinley was required to sign. She *was then to be accorded additional time to execute the documents before she could be held in* contempt for her failure to sign. Indeed, the order in question before us contains similar pro-

visions. The interpretation of Section 3.72 with regard to clarifications resulting in money judgments is not as clear. We do not address the question of whether the money judgment for arrearages constitutes an impermissible retroactive clarification or whether clarification must be applied only prospectively as those issues are not before us for review.

11. The judgment reflects arrearages of gross benefits accrued over the two years immediately preceding the filing of the motion for enforcement.