Bluewater Constructors, Inc. v. Ronnie Murphy and Gary Murphy
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-187-CV

     BLUEWATER CONSTRUCTORS, INC.,
                                                                         Appellant
     v.

     RONNIE MURPHEY
     AND GARY MURPHEY,
                                                                         Appellees
 

From the 79th District Court
Jim Wells County, Texas
Trial Court # 93-10-32109-CV
                                                                                                                
                                                                                                            
DISSENTING OPINION
                                                                                                                
   
PUNITIVE DAMAGES
      This was a tragic incident. Mr. Murphey’s life was cut short when he collided with a
concrete truck. However, after a diligent search of the evidence in this case, I am unable to
find any evidence that would meet either prong of the Moriel


 test for an award of punitive
damages.
      Of twelve trucks which delivered concrete to the job site, nine were directed to back up to
the forms in which the concrete was being poured. Stallings was delivering the last load. The
maneuver required to back into the location was relatively simple. There were three steps: 1)
the concrete truck would be pulled to the right-hand side of the road; 2) it would then be
turned sharply to the left across both lanes of traffic; and 3) it would then be backed off the
roadway into the site.
      The critical safety issue in this maneuver was that between step 1 and step 2, the driver
must be certain the traffic was clear so that he could safely perform the maneuver. Obviously,
Stallings, the driver of the truck, either failed to estimate how much time it would take to
perform the maneuver or failed to see Murphey’s headlights approaching him in the oncoming
lane of traffic. Murphey either failed to see or failed to react to the fully illuminated concrete
truck in his lane of traffic.


 It was not raining at the time of the collision and although the
truck was not identifiable, the lights on the truck were visible for approximately 1000 feet.
      Stallings had completed steps one and two and was performing step three. The truck had
almost cleared the oncoming lane of traffic. Murphey was coming from the opposite direction
towards the truck, as it was performing this maneuver, i.e. in the oncoming lane of traffic. 
Murphey collided with the front of the cement truck. Murphey was killed. The jury
determined that Bluewater, the general contractor, was grossly negligent and awarded
$500,000 in punitive damages.
      Moriel summarizes the definition of gross negligence as follows:
In summary, the definition of gross negligence includes two elements:
(1) viewed objectively from the standpoint of the actor, the act or omission
must involve an extreme degree of risk, considering the probability and
magnitude of the potential harm to others, and (2) the actor must have actual,
subjective awareness of the risk involved, but nevertheless proceed in
conscious indifference to the rights, safety, or welfare of others.

Id. at 23. In discussing how to apply the rule, the Court states:
Determining whether an act or omission involves extreme risk or peril
requires an examination of the events and circumstances from the viewpoint
of the defendant at the time the events occurred, without viewing the matter
in hindsight. In every negligence or gross negligence case, some injury has
allegedly occurred. However, the magnitude of the injury may be entirely
disproportionate to the riskiness of the behavior. For example, inadvertently
dropping a wooden board into the metal hold of a ship may constitute
negligence, but cannot be gross negligence. This is so even though the
board, upon landing, triggers a Rube Goldberg chain reaction, eventually
causing the whole ship to explode.[15] See In re Polemis, [1921] 3 K.B. 560. 
If somebody has suffered grave injury, it may nevertheless be the case that
the behavior which caused it, viewed prospectively and without the benefit of
hindsight, created no great danger. In such a case, punitive damages are not
appropriate.
 
[15] In contrast, an act or omission that creates a great peril but results in only a
minor injury may be grossly negligent. If, for example, a person fires a gun
randomly into a crowd of schoolchildren, but the shooting only results in the
destruction of a pair of sunglasses, the defendant would still be grossly negligent. 
See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, _____, 113
S.Ct. 2711, 2720-21, 125 L.Ed.2d 366, 380 (1993).

Id.
      The evidence admitted at trial reflects that at the time no one suggested individuals to flag
traffic or additional signage were necessary to safely perform the maneuver. Alamo’s project
manager was on site and admitted that he suggested to Bluewater’s Superintendent that,
because of conditions at the site, it would be better to back the trucks into the job site. He also
testified that he believed the maneuver could be performed safely.
      There is simply nothing in this record, when viewed from Bluewater’s perspective at the
time which indicated the maneuver being performed on the farm road by the concrete trucks
involved an extreme degree of risk. Further, there is nothing to indicate that Bluewater’s
superintendent was subjectively aware of an extreme risk but nonetheless proceeded in
conscious indifference to the safety of others.
      There was no outrageous behavior in the situation that justifies punishment. I would
affirm Bluewater’s first issue, reverse the portion of the judgment awarding punitive damages,
and render a judgment for no punitive damages.
PROXIMATE CAUSE
      Bluewater has also contested whether its negligence proximately caused the injury. In this
issue, Bluewater has not contested that it owed a duty to Murphey. There is sufficient
evidence that, if Bluewater had a duty to oversee that the specific maneuver used to position
the concrete truck to deliver its load was actually performed in a safe manner, that the duty
was breached, and was a proximate cause of Murphey’s death. Thus, I concur in the
majority’s result as to issue two.
ORAL INSTRUCTION TO THE JURY
      The third issue comes to us in a very odd procedural posture. The trial court advised the
parties during the charge conference that it intended to instruct the jury that Bluewater was
responsible for overseeing the project and safety. Bluewater indicated they would object to
such an instruction, generally on the basis that it was a comment on the evidence and was an
erroneous statement of the law. The court again indicated that it was going to so instruct the
jury. Bluewater asked the court to also include other portions of the contract in its instruction
to the jury if it was going to give such an instruction, specifically the portion of the contract
related to what the work or work site was.
      The trial court’s instruction was not reduced to writing.


 Bluewater never had an
opportunity to object to it prior to the court orally giving the instruction to the jury. No
additional objection was made at the time the trial court gave the oral instruction to the jury. 
However, in this unusual situation, I would hold that the objection made by Bluewater
sufficiently apprised the trial court of Bluewater’s complaints to preserve them for presentation
and consideration by this court.
      Upon a reading of the full record, the harmful nature of this instruction is evident. There
was no dispute at trial that Stallings was at fault, if not entirely, at least to some considerable
extent. The evidence was unrebutted that he failed to make the backing maneuver safely. 
Also, Bluewater had made it a hotly contested issue as to where the responsibility for the safety
on the work site began. Did it begin on the highway or only at the actual work site, i.e., What
was the “work site?”
      The trial court instructed the jury that “I have found that the Contractor is responsible for
the safety, and that is Bluewater, the defendant in this case.”
      Because of the way the evidence was presented by both parties, this was the equivalent of
telling the jury that Bluewater was negligent.
      Specifically, this is because Bluewater had presented evidence of the negligence of
Stallings and his employer, Alamo Ready-Mix. Although Bluewater and Valero


 may have
contractually allocated the risk of loss to Bluewater by contract, this did not alleviate the need
for the jury to determine whether Stallings, Alamo or Bluewater was negligent.
      By instructing the jury in this fashion, the jury was required to apportion the liability for
anything that was not done “safely” to Bluewater, while other acts of “negligence” were still
attributed to Stallings and Alamo.


 The court’s oral instruction was an erroneous statement of
the law, a comment on the weight of the evidence and an improper method of instructing the
jury.
      I would hold that the error was harmful, and reverse and remand for a new trial.






                                                                         TOM GRAY
                                                                         Justice

Dissenting opinion delivered and filed June 21, 2000
Do not publish                                              



 666. Nor can he now characterize his military retirement as “separate property.” It is too late
for Mr. Bates to collaterally attack the characterization of property under the divorce decree,
despite his attempts here to argue principles of tracing under the clarifying order.


 See Reiss, 40
S.W.3d at 614-15. Accordingly, we find the clarifying order merely specified a more precise
method of effecting the divorce decree. See Beach, 912 S.W.2d at 348. It did not change the
character of any retirement benefits from separate to community.
      Mr. Bates next asserts that principles of “tracing” will lead us to conclude that because the
purchase back of military retirement time was made with separate funds, we should find that the
military retirement time is now separate property or did not “exist” until the purchase back. We
disagree with Mr. Bates’s contention. The principle of tracing applies to rebut the presumption
that property acquired during marriage is community property. See Cockerham v. Cockerham,
527 S.W.2d 162, 167 (Tex.1975); Scott v. Scott, 805 S.W.2d 835, 837 (Tex. App.—Waco 1991,
writ denied). This community presumption may be rebutted by clear and convincing evidence
tracing the property and its mutations back to a spouse's separate estate. Id.
      Mr. Bates misapplies the principle of tracing to this case. The property at issue is the civil
service retirement benefits resulting from years of military and civil service, not the actual
purchase back which triggered the vesting of that benefit. Any benefit based on Mr. Bates’s
military service was presumptively a community asset earned during the marriage. Despite his
assertion to the contrary, the separate property characterization of the funds enabling the purchase
back does not affect the characterization of the benefits from the years of military service. The
nature of Mrs. Bates’s interest in the retirement benefits earned during the marriage has not
changed simply because Mr. Bates purchased back the military service years with separate funds
after the divorce. Mrs. Bates’s interest in benefits from the 13 years and 7 months of military
service and 8 years and 8 months of civil service exists under the divorce decree because the
parties were married during the time the community earned the potential retirement interest.
      It should also be noted that the trial court’s clarifying order considered Mr. Bates’s purchase
back of his years of military service and adjusted the clarifying order. The order also required
Mrs. Bates to pay for one-half of the purchase because she benefits from the community interest
in the retirement asset. Mr. Bates paid $18,949.27 to the government to purchase his military
service time toward his civil service retirement. The court ordered Mrs. Bates to contribute one-half, or $9,474.64, in the interest of justice.
       Accordingly, point two is overruled. 
Application of the Federal Statute 
      In point three, Mr. Bates asserts that the trial court erred in applying 5 U.S.C. § 8422, which
was enacted after the date of the divorce decree. However, the applicable statute allowing Mr.
Bates to credit his years of military service towards his civil service retirement is 5 U.S.C. § 8332,
which was correctly applied here. Point three is overruled.
Qualified Domestic Relations Order
      In point number four, Mr. Bates argues that the trial court erred by entering a qualified
domestic relations order (“QDRO”). It is true that clarification is a remedy here, but it is in fact
a prerequisite to enforcement rather than a method of enforcement. See Dechon v. Dechon, 909
S.W.2d 950, 961 (Tex. App.—El Paso 1995, no writ). The Family Code specifically allows the
court to “render further orders to enforce the division of property made in the decree.” Tex.
Fam. Code § 9.006(a) (Vernon 1997); see also McPherren v. McPherren, 967 S.W.2d 485, 490
(Tex. App.—El Paso 1998, no pet.); Dechon, 909 S.W.2d at 961. Because Mrs. Bates’s motion
resulted in a clarifying order, we cannot find that the trial court erred by entering a QDRO as the
method to enforce the order. Point four is overruled.
      The judgment is affirmed.

                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed February 13, 2002
Do not publish
[CV06]