

## NUMBER 13-08-194-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

KURT D. TUGMAN,                                                                  Appellant,

v.

LENNIS BENNETT TUGMAN,                                               Appellee.

On appeal from the 214th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Kurt D. Tugman, appeals the appointment of a receiver to sell Tugman's family residence as part of the property division in a divorce decree. By one issue, Tugman argues that the trial court abused its discretion in appointing a receiver. We affirm.

## I. Background

This matter arises from an acrimonious divorce proceeding between appellant, Kurt D. Tugman, and appellee, Lennis Bennett Tugman. Appellee filed a petition to divorce appellant on May 10, 2006. Pursuant to a stipulation made on the record in August of that year, the parties agreed that appellee would occupy their former marital residence and that the property would be listed for sale for a mutually agreed-upon price, with the proviso that any sale of the property would not close and possession would not be delivered to a buyer until on or about January 31, 2007. This was done in order to maximize tax benefits. The parties also agreed to allow appellant sufficient time to notify his customers regarding the sale of his home.

The property did not sell during the pendency of the divorce proceedings. According to an affidavit by Kim Erwin, the broker/owner of Realty World Island Properties, the house was listed for sale on November of 2006. According to her affidavit:

> I have been a realtor for twenty-six years; I am the broker/owner of Realty World Island Properties. I have been selling residential property on [Padre] Island for sixteen years. I am familiar with the property at 13906 El Socorro Loop on Padre Island which has been on the market since 11/02/06. The house is listed on MLS and has been since its original listing. During the time Mr. Tugman occupied the property, I never had any difficulties arranging for the house to be shown and the house was in proper condition to be shown.
>
> Regarding the sale of 13906 El Socorro Loop, Corpus Christi, TX, 78418 that was listed for $799,900 on all three offers.
>
> 1st offer – Offer was for $675,000. The buyers increased their offer to $711,000. There was a verbal conversation with the buyers at a function at my office, they told me that Kurt would sell the home at $725,000, but that they already purchased a house.
>
> 2nd offer – Offer was for $750,000. I wrote the contract on October 11, 2007. On Monday, October 15, 2007, the buyer withdrew his offer because

2

he did not want to wait. Lennis agreed to the price but did not sign. Kurt said he needed to contact his attorney. Neither party signed.

The parties' final decree of divorce, signed on November 15, 2007, contains the following provisions pertaining to the sale of the residence.

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at lot 25, block 25, COCQUINA BAY subdivision, according to the map, plat, or deed records of Nueces County, Texas, and more commonly known as 13906 El Socorro Loop, Corpus Christi, Nueces County, Texas, shall be sold under the following terms and conditions:

1. The parties shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the Corpus Christi Board of Realtors.

2. The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent. If Petitioner and Respondent are unable to agree on a sales price, on the application of either party, the property shall be sold under terms and conditions determined by a court-appointed receiver.

3. Respondent shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and Respondent shall have the exclusive right to enjoy the use and possession of the premises until closing.

4. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows: 50% to Petitioner and 50% to Respondent.

The divorce decree specifically gave the trial court the right to enter further clarifying orders and orders of enforcement.

3

Erwin retained the listing for the house following the entry of the divorce decree, and her affidavit detailed a third offer on the house as follows:

> 3rd offer – Offer was for $715,000 cash. Kurt countered the closing date from January 23, 2008 to January 28, 2008. Lennis and Kurt agreed on the sales price. Lennis signed the contract, but Kurt did not.

It is unclear whether this third offer was made prior to, or after, the divorce decree was entered. Appellee filed an emergency motion to approve a sale of the property, heard on January 11, 2008, which appears to concern the third offer detailed above. At that hearing, the trial court ordered the parties to consummate a sale with a third-party purchaser if it could be accomplished. The court also gave appellant the option of purchasing the house for $735,000. According to the trial court:

> If they're willing to go $735,000, get a contract and sell it. If they're not, then I'll give Mr. Tugman until the 23rd to bring in a check to pay Mrs. Tugman off. If not, we'll get a receiver to take over the sale.

The sale with a third-party purchaser did not take place, and appellant failed to pay appellee by the date specified by the trial court.

On January 31, the parties were before the trial court on an enforcement hearing, and the parties began discussing the sale of the residence. Appellant testified that he had obtained $50,000 from his parents to purchase the residence, but did not have the remainder of the money that he would owe appellee for her share of the sale proceeds. He argued that he should not have to pay appellee $67,954 because that included a share of the escrow fees that he believed appellee should have paid pursuant to the terms of the divorce decree.

4

The trial court directed appellant to pay appellee $50,000 and give her $12,500 from a retirement account, which had allegedly not been divided in earlier proceedings.[1] Appellant told the trial court that "I cannot put [my parents'] money on the line if I can't afford to pay the bills." The trial court told appellant that "it's going to be one or the other. That, or Mr. Mark Giles will be the receiver and he will sell this house immediately." The trial court imposed a new deadline of February 15 and told appellant to vacate the house as of that date.

The sale to appellant was not consummated by February 15. Some of the facts relating to this failed purchase are in dispute. It is clear that appellant left the $50,000 check at the title company and executed documents for the transfer of the retirement funds. Appellant alleges that appellee failed to complete the transaction, and appellee argues that appellant failed to complete the transaction. Appellant's own argument and evidence on this issue is conflicting. Appellant contends that appellee failed and refused to execute the deed and release because she remained liable on the note for the house. While appellant's counsel suggested escrowing the deed, appellant refused and "instructed Security [T]itle not to release the check" because his parents found this solution unacceptable.

On March 6, the trial court held a hearing and executed the order, subject to appeal herein, appointing Mark Giles as receiver. Giles ordered appellant to vacate the residence and listed the property for sale. Giles obtained a contract for the sale of the home which was set to close on March 15.

---

[1] We note that the division of marital property was not challenged on appeal following entry of the final decree of divorce, and we do not express any opinion herein regarding the division of the marital estate.

5

On April 1, the trial court held a hearing on appellant's emergency motion to oppose the appointment of a receiver and to enforce the sale of property. Stating that he had terminated his counsel, appellant appeared and argued his motion pro se.[2] The trial court denied appellant's motion.

After retaining appellate counsel, appellant filed a notice of appeal and filed a motion for temporary orders asking this Court (1) to allow him to move back into the family residence, and (2) to stay the sale of that property, scheduled for May 15, 2008, until disposition of this interlocutory appeal. This Court granted the motion, in part, and ordered stayed the sale of real property scheduled for May 15, 2008 until further order of this Court, and denied the motion insofar as appellant sought to resume residence in the subject property. Appellant also filed an emergency motion to expedite decision on appellant's motion for temporary orders, which we granted. We further ordered an expedited briefing schedule.[3]

## II. JURISDICTION

As a threshold matter, we address appellee's motion to dismiss this appeal. Appellee complains that we lack jurisdiction over this matter because appellant is making an impermissible collateral attack on the final decree of divorce and that this is not an interlocutory appeal.

---

[2] Appellant has been represented by a series of different counsel at varying times during the course of this proceeding.

[3] Appellee's brief was received after business hours on the date it was due to be filed in this Court. After review and consideration, the Court grants appellee's request to consider her brief and orders the same filed herein. The brief is substantially not in compliance with the appellate rules of procedure; however, the Court accepts it for filing given the exigent nature of the case and the circumstances of its filing.

As a general rule, only final judgments are appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (Vernon 1997). One exception to this rule is an interlocutory order "[appointing] a receiver or trustee." *See id.* § 51.014(a)(1) (Vernon Supp. 2007). We construe this exception strictly because it "is a narrow exception to the general rule that only final judgments and orders are appealable." *See Montgomery County v. Fuqua*, 22 S.W.3d 662, 665 (Tex. App.–Beaumont 2000, pet. denied) (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 730 (Tex. App.–Austin 1999, no pet.)).

Appellant's sole issue on appeal pertains not to the divorce decree but to the trial court's appointment of a receiver. Because appellant challenges the appointment of a receiver, the trial court's order is appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1); *see also Edmonds v. Gray*, No. 12-07-00258-CV, 2008 Tex. App. LEXIS 1520, at *10 (Tex. App.–Tyler Feb. 29, 2008, no pet.) (mem. op.). Accordingly, we overrule appellee's motion to dismiss the appeal.

### III. APPOINTMENT OF A RECEIVER

The court that rendered the decree of divorce retains the power to enforce the property division. TEX. FAM. CODE ANN. § 9.002 (Vernon 2006). A court may render further orders to enforce the division of property made in the decree of divorce to assist in the implementation of or to clarify the prior order. *Id.* § 9.006(a) (Vernon 2006). However, a court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. *Id.* § 9.007(a) (Vernon 2006). Such orders may more precisely specify the manner of carrying out the property division previously ordered. *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.–El Paso 1995, no writ).

7

Section 7.001 of the Texas Family Code grants a trial court broad authority to divide marital property in a manner that it deems just and right upon the dissolution of marriage. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *Rusk v. Rusk*, 5 S.W.3d 299, 306 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). That broad authority sometimes includes the power to enlist the aid of a receiver to effectuate the trial court's orders and judgments. *Rusk*, 5 S.W.3d at 306-07.

In this case, the trial court, as the court that rendered the divorce decree, retained the power to enforce the property division. *See* TEX. FAM. CODE ANN. § 9.002. Both parties agreed, in pretrial hearings and in the divorce decree, that their residence would be sold for a mutually agreed upon price. We cannot conclude that appointment of a receiver amends, modifies, or alters the substantive division of property. *See id.* § 9.007(a). Rather, the appointment of a receiver simply specifies the precise manner of carrying out the property division previously ordered, i.e., the sale of the property. *See Rusk*, 5 S.W.3d at 306; *Dechon*, 909 S.W.2d at 956. Because the appointment of a receiver does not amend, modify, alter, or change the substantive division of property in the divorce decree, the trial court had the power to appoint a receiver.

## IV. STANDARD OF REVIEW

Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize. *Rusk*, 5 S.W.3d at 306. However, a trial court has broad powers to enlist the aid of a receiver in order to effectuate its orders and judgments. *Vannerson v. Vannerson*, 857 S.W.2d 659, 673 (Tex. App.–Houston [1st Dist.] 1993, writ denied). We review an appointment of a receiver for an abuse of discretion. *Sheikh v. Sheikh*, 248 S.W.3d 381, 386 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *Moyer v. Moyer*, 183

8

S.W.3d 48, 51 (Tex .App.–Austin 2005, no pet.); *Vannerson*, 857 S.W.2d at 673. The test

for abuse of discretion is whether the court acted without reference to any guiding rules

and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

In other words, we must determine whether the act was arbitrary or unreasonable. *Id*. at

242. The mere fact that a trial court may decide a matter within its discretionary authority

in a manner different from that of an appellate judge in a similar circumstance does not

demonstrate that an abuse of discretion has occurred. *Id.*

Under the abuse of discretion standard, neither legal nor factual insufficiency are

independent reversible grounds, but are relevant in assessing whether the trial court

abused its discretion. *In re L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.–Houston [1st Dist.]

2003, pet. dism'd); *Farish v. Farish*, 921 S.W.2d 538, 542 (Tex. App.–Beaumont 1996, no

writ). In making this determination, the reviewing court must view the evidence in the light

most favorable to the actions of the trial court and indulge every legal presumption in favor

of the judgment. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 578 (Tex. App.–Houston [1st

Dist.] 1997, pet. denied); *In re S.B.C.*, 952 S.W.2d 15, 17-18 (Tex. App.–San Antonio

1997, no writ). If there is some evidence of a substantive and probative character to

support the judgment, the trial court did not abuse its discretion. *Nordstrom*, 965 S.W.2d

at 578; *In re S.B.C.*, 952 S.W.2d at 18.

## V. ANALYSIS

Appellant contends that the trial court erred in appointing a receiver because it did

so based on the argument of counsel without sufficient evidentiary support. *See Norem*

*v. Norem*, 105 S.W.3d 213, 216 (Tex. App.–Dallas 2003, no pet.) (holding that an

appointment of a receiver under the family code requires evidence that the receivership is

9

for the protection and preservation of the marital estate); *see also Stoker v. Stoker*, No. 12-07-00334-CV, 2008 Tex. App. LEXIS 3455, at \*4-\*6 (Tex. App.–Tyler May 14, 2008, no pet. h.) (mem. op.) (collecting and analyzing cases and concluding that "there remains some commonality to the analysis with regard to the requirement that the order appointing a receiver must be supported by evidence of some sort").

While we agree with appellant that several of the hearings before the trial court consisted solely of the arguments of counsel, we nevertheless determine that the trial court had before it sufficient evidence to support its order appointing a receiver. The record contains:  (1) affidavit testimony from appellant, Erwin, and others; (2) the stipulation entered by the parties on the record regarding the sale of the property; and (3) sworn testimony offered by appellant himself. Accordingly, we conclude that the trial court's order appointing a receiver was not devoid of evidentiary support.

Appellant further contends that the trial court established the terms under which appellant could purchase the residence, and appellant fully complied with the court's requirements. According to appellant, the trial court merely ordered him to pay appellee $50,000 and give her $12,500 from an undivided retirement fund before February 15, 2008. Appellant argues that he complied with these requirements, and there is no evidence to the contrary. Based on the evidence previously recounted herein, we disagree with appellant's contention. Moreover, it is undisputed that the parties were unable or unwilling to complete the transaction as contemplated by February 15, and the property remains unsold to date.

In the instant case, the parties stipulated in August 2006, that the property would be listed for sale and sold for a mutually agreeable price. The divorce decree itself provides that the property would be listed and sold for a mutually agreeable price. The decree also states, without further detail, that if appellant and appellee "are unable to agree on a sales price, on the application of either party, the property shall be sold under terms and conditions determined by a court-appointed receiver."

The residence has been on the market for approximately eighteen months, and there have been at least four offers from third parties to purchase the property. Appellant and appellee have failed to complete any of those transactions. Further, based on the record before this Court, the trial court gave appellant two separate opportunities to purchase the property. The trial court first ordered appellant to pay appellee for the property by January 23, and appellant failed to do so. The trial court again allowed appellant an opportunity to purchase the property by February 15, but as detailed above, appellant again failed to complete the purchase. Based on the foregoing, we conclude that the trial court gave the parties a reasonable period of time within which to complete the sale of their former residence. *See Cherco Prop., Inc. v. Law, Snakard & Gambill*, 985 S.W.2d 262, 266 (Tex. App.–Fort Worth 1999, no pet.) (stating that where a contract does not specify the time for performance, the law will imply a reasonable time). The trial court did not abuse its discretion in appointing a receiver to sell the property.

## VI. CONCLUSION

Because there was some evidence of a substantive and probative character to support the trial court's order appointing a receiver, the trial court did not abuse its discretion. *See Nordstrom,* 965 S.W.2d at 578; *In re S.B.C.,* 952 S.W.2d at 18.

11

Accordingly, we overrule appellant's sole issue on appeal and lift the stay previously ordered by this Court.  The order of the trial court is affirmed.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 22nd day of May, 2008.