**HERITAGE RESOURCES,
INC., Appellant,**

v.

**The ANSCHUTZ
CORPORATION, Appellee.**

No. 08–84–00258–CV.

Court of Appeals of Texas,
El Paso.

May 15, 1985.

Rehearing Denied June 12, 1985.

Terry L. Jacobson, Frank Finn, Schuyler Marshall, Thompson & Knight, Dallas, for appellant.

Charles Tighe, Cotton, Bledsoe, Tighe, Morrow & Dawson, Midland, Richard B. Miller, Jacks C. Nickens, Miller, Keeton, Bristow & Brown, Houston, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This appeal involves parties who entered into a joint venture agreement to develop drilling prospects in West Texas and New Mexico. The dispute developed over ownership rights of a well drilled in Midland County, and following a jury trial, judgment was entered denying recovery to Heritage Resources, Inc. We affirm.

In August, 1981, The Anschutz Corporation and Heritage Resources, Inc. entered into a Joint Venture Agreement whereby Heritage would locate drilling prospects and do the necessary geological and leasing work to make the prospects attractive to drill and Anschutz would provide certain financial support and agree to drill the prospects it approved. Each party would, by fulfilling their obligations under the agreement, earn a participating interest in a designated Prospect Area of Mutual Interest and in any producing wells, with options to sell their interest to third parties.

One prospect developed by Heritage was the "Moonlight South Prospect" in Midland County. It was to be drilled as an Ellenberger test at approximately 13,500 feet and at a cost of about $1,500,000.00 if completed. Heritage had leased approximately 2,250 acres in the prospect area and obtained substantial seismic work, all at a cost of nearly $750,000.00 to Anschutz.

The Joint Venture Agreement in paragraph 4 provides:

As soon as possible after Heritage has performed all necessary enhancement work and determines that a Prospect is ready for sale or possible drilling (as such readiness is further defined below), Heritage shall give written notice of such readiness to Anschutz providing all data, interpretations, maps, other information, and the terms, if any, at which Heritage is then willing to sell its Earned Interest (as defined below) in the Prospect. Readiness of the Prospect shall be in each such case the enhancement of the Prospect geologically to that point at which a reasonably prudent operator in the industry would elect to drill to test the Prospect. The Prospect shall be deemed ready as of ten days following the receipt by Anschutz of Heritage's original notice of readiness.

On October 25, 1982, Heritage wrote to Anschutz that it was willing to consider the Moonlight South Prospect drillable, subject to three specified conditions. These included obtaining a lease from the Scharbauer family covering Section 27, Block 40, T–1–S, T & P R.R. Co. Survey; obtaining a farmout from Hulen Lemon on the NE/4 of Section 28, Block 40; and obtaining surface acreage from Magnatex at a reasonable price. That letter expressed a desire that

Heritage be permitted to "back-in after payout of all acreage, seismic and drilling costs of said initial well for 12.5%." By paying its pro rata cost, Heritage could earn a one-half interest in the prospect.

On December 9, 1982, Anschutz wrote to Heritage to declare the Moonlight South Prospect "ready." Attached were copies of the Scharbauer lease, Lemon farmout and the Magnatex agreement. The letter said the well was to be spudded on or before December 31, 1982. Also attached was an invoice for $362,557.20 for one-half of all acquisition costs incurred by Anschutz up to that time and an Authorization For Expenditure to reflect the drilling and completion costs. The letter said:

If Heritage elects to participate in this prospect as to its "earned interest", then please remit the invoice amount within ten days of your receipt of this letter along with an executed copy of the attached well AFE.

Heritage made no response and did not pay the invoice in order to earn a one-half interest in the Moonlight South Prospect. Anschutz proceeded to drill and complete the well solely at its cost. On February 28, 1983, after the well had been drilled, Heritage wrote Anschutz claiming ownership of a one-half interest in the prospect. Suit was filed on March 14, 1983, seeking to recover an interest in the well and damages. Following a four-week trial, the jury returned its verdict and judgment was entered in favor of Anschutz denying all recovery to Heritage.

Heritage contends in its first point of error that the trial court erred in failing to enter judgment for it because Anschutz breached the Joint Venture Agreement as a matter of law: (1) in declaring the Moonlight South Prospect "ready;" (2) in depriving Heritage of its right to sell its interest within thirty days; (3) in requiring Heritage to elect to participate in the drilling of the initial well within ten days; and (4) in requiring Heritage to pay for its share of acquisition costs within ten days.

In answer to special issues, the jury, among other things: (1) failed to find Anschutz breached the Joint Venture Agreement by declaring the Moonlight South Prospect ready to drill; (3) found Heritage had agreed to call the Moonlight South Prospect drillable by its letter of October 25, 1982, subject only to completion of the conditions set out in the letter; (4) found that by December 9, 1982, Anschutz had reasonably satisfied the conditions set forth in the October 25, 1982, letter from Heritage; (7) failed to find Anschutz breached the Joint Venture Agreement by requesting Heritage to pay its share of the acquisition costs within ten days; (11) found ten days was a reasonable time for Heritage to pay its share of the acquisition costs; and (12) failed to find Anschutz in its letter of December 9, 1982, requested Heritage agree to pay one-half of the estimated cost of the initial well within ten days. By their answers, the jury found for Anschutz and determined there had been no breach of the Joint Venture Agreement by Anschutz in declaring the prospect "ready" and requiring payment from its joint venture for one-half of the acquisition costs within ten days.

▮ But if, as Heritage contends, the agreement was unambiguous, then the rights of the parties should be determined as a matter of law and no issue should have gone to the jury concerning a breach of contract. The question of whether a contract is ambiguous is one of law for the court. *Coker v. Coker*, 650 S.W.2d 391 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980). If the instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *Coker v. Coker, supra; R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., supra.* We agree with the parties that the part of the Joint Venture Agreement with regard to declaring the prospect ready is not ambiguous. In such a case the construction of the contract is a question of law for the court, and

a jury may not be called upon to construe the legal effect of the agreement. *Trinity Universal Insurance Company v. Ponsford Brothers*, 423 S.W.2d 571 (Tex.1968); *Hervey v. Passero*, 648 S.W.2d 344 (Tex. App.—El Paso 1983), *affirmed in part, reversed in part*, 658 S.W.2d 148 (Tex. 1983).

■ Paragraph 4 of the Joint Venture Agreement provided that Heritage would determine when the prospect was "ready" and would notify Anschutz, and ten days thereafter "[t]he Prospect shall be deemed ready." In October, 1982, Heritage was aware of three requirements that had not been met in order that a reasonably prudent operator would elect to drill to test this prospect. Accordingly, on October 25, 1982, it wrote a conditional letter of readiness. It told its joint venturer that it considered the prospect drillable subject to the three listed conditions. On December 9, 1982, Anschutz replied the conditions had been met, it furnished evidence by sending copies of the additional leases and said the Moonlight South Prospect was ready. At that time nothing remained to be done and Heritage did not reply or advise to the contrary. Heritage's next letter to Anschutz, after the well was completed, identified its letter of October 25, 1982, as a "conditional notice of 'readiness'." We agree and hold that on December 9, 1982, the three conditions had been met and ten days thereafter the well was ready, and that as a matter of law the parties by the exchange of letters so agreed and the provisions of paragraph 4 of the Joint Venture Agreement had been met. If there was any fact issue, it was decided favorably to Anschutz by the jury.

■ Once the prospect was ready to be drilled, we are required to consider the obligations which each joint venturer had to the other. Anschutz told Heritage to pay its one-half of the acquisition costs within ten days if it elected to participate in the prospect. Heritage did not pay. The last two sentences of paragraph 4 of the Joint Venture Agreement state:

> If Heritage makes that payment to Anschutz required below, Heritage shall have been deemed to have earned one-half of all such interests in the Prospect Area of Mutual Interest. Heritage shall be entitled to receive from Anschutz an appropriate assignment of such Earned Interest contemporaneously with payment by Heritage to Anschutz of that amount equal to the costs incurred by Anschutz attributable to the Earned Interest percentage of Heritage for such Prospect.

Clearly, Heritage would own a one-half interest in the Prospect Area of Mutual Interest if it paid Anschutz one-half of the acquisition costs. But, the Joint Venture Agreement is silent as to the time within which such payment was required. When no time for performance is given in a contract, the law will imply that the time of performance was to be a reasonable time. *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940 (1944); *Price v. Horace Mann Life Insurance Company*, 590 S.W.2d 644 (Tex.Civ.App.—Amarillo 1979, no writ). What is a reasonable time depends upon the facts and circumstances as they existed at the date of the contract. *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1958). Although "reasonable time" is a relative term, it never means an indulgence in unnecessary delay; instead it denotes such promptitude as the circumstances will allow for the action called for by the contract. *Price v. Horace Mann Life Insurance Company, supra;* 14 Tex.Jur.3d, Contracts, sec. 228 (1981).

In this case, the Joint Venture Agreement provided that the prospect would be considered ready ten days following the notice of readiness. It also provided that "[u]pon a determination of readiness of a Prospect, all provisions of the operating agreement attached hereto * * * shall control any further operations on the Prospect Area of Mutual Interest, * * *." It would

be a strained construction to provide for an effective date for the operating agreement at a time different from the time when the operator would know whether a non-operator had made the necessary payment to obtain an earned interest in the prospect about to be drilled. This is particularly so when Anschutz had to make a decision to drill the well alone and be solely responsible for more than $1,000,000.00 in drilling and completion costs.

■ Since the Joint Venture Agreement was silent on the time for performance, the trial court correctly submitted an issue to the jury as to what was a reasonable time for Heritage to pay its share of the acquisition costs. The jury found ten days was a reasonable time. We believe that finding was consistent with the facts and circumstances at the time the agreement was made and there is no attack in this appeal upon the sufficiency of the evidence to support that finding.

■ Having determined that the well was properly declared ready on December 9, 1982, and that Heritage had ten days to pay for and earn its one-half interest in the prospect and that it failed to do so, we now turn to the complaint that Anschutz denied Heritage its contract right to sell its interest within thirty days. The Joint Venture Agreement gave Heritage a right to sell its earned interest in any Prospect Area of Mutual Interest, and Anschutz had an option to buy one-fourth of that interest on the same basis on which Heritage was willing to sell to a third party. Paragraph 5(c) of the agreement provides:

> If prior to receipt of notice of election to sell by Heritage, Anschutz gives notice to Heritage that it intends to drill a well on the Prospect Area of Mutual Interest, Heritage shall nonetheless have 30 days from receipt of such notice to drill to exercise its rights set forth above to sell its Earned Interest.

This provision applies only to "its Earned Interest." Paragraph 4 required payment to Anschutz in order for Heritage "to have earned one-half of all such interests in the Prospect Area of Mutual Interest." If there was no payment, there was no earned interest. If there was no earned interest, then there was nothing to sell within a thirty-day period and there was no breach of that contractual right. Point of Error No. One is overruled.

■ Heritage contends in Point of Error No. Two that the trial court erred in failing to enter judgment for it because Anschutz breached its fiduciary duty to it as a matter of law. The jury found in answer to Special Issue 14–B that Anschutz did not breach its fiduciary duty to Heritage by sending the December 9, 1982, letter and in treating Heritage's interest in the Moonlight South Prospect as being forfeited December 19, 1982. Heritage contends that as joint venturers, each of these parties owed the other a duty of utmost good faith and fair dealing. That is the holding in *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). But, unlike *Ginther v. Taub*, 675 S.W.2d 724 (Tex.1984) and *Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984), this is not a case where one party by some wrongdoing sought to obtain an unjust enrichment for itself. Anschutz's conduct was "open and above board." Heritage, and it alone, decided whether to pay and obtain an earned interest in the Prospect Area of Mutual Interest. It did not pay, and it did not even suggest after the December letter that more time was desired either to pay for its interest or to try to sell its interest. Instead it chose to remain silent, "ride the well down" and once it was determined that the well was commercially productive to claim a one-half interest. That can hardly be a claim for equitable relief by one with clean hands. At that time, Anschutz had spent or contracted to pay around $2,000,000.00 for acquisition costs, drilling expense and completion costs. Heritage had avoided committing itself for any of this expense. We conclude that the *Fitz-Gerald, Ginther* and *Manges* cases are not

controlling. Point of Error No. Two is overruled.

The last two points of error assert the trial court erred in entering judgment based upon the jury's answers to Special Issues 15 through 20. Those issues deal with matters of waiver and estoppel. Having concluded that Heritage was never entitled to any earned interest in the Prospect Area of Mutual Interest, those issues are immaterial and are not controlling as to the judgment which was entered. Finding no error, Points of Error Nos. Three and Four are overruled.

The judgment of the trial court is affirmed.