**Barbara PEARCY, Appellant,**

v.

**ENVIRONMENTAL CONSERVANCY OF AUSTIN AND CENTRAL TEXAS, INC., et al., Appellees.**

**No. 3–90–179–CV.**

Court of Appeals of Texas, Austin.

Aug. 14, 1991.

Rehearing Overruled Sept. 11, 1991.

William W. McNeal, Lockhart, for Barbara Pearcy.

Richard D. Milvenan, Vinson & Elkins, Austin, for Environmental Conservancy of Austin and Cent. Texas, Inc.

Ken Oden, County Atty., Jim McCormack, Asst. County Atty., Austin, for Travis County.

Before CARROLL, C.J., and JONES and SMITH, JJ.

CARROLL, Chief Justice.

This is an action for breach of contract and for foreclosure of an alleged lien. C.W. and Barbara Pearcy sold real property to a nonprofit corporation for the creation of a wilderness preserve. The corporation agreed to pay additional consideration for the land if certain conditions occurred. Nine years after the sale, the Pearcys sued the corporation, Travis County, which now operates the preserve, and others, alleging they breached the agreement. The trial court rendered judgment against the Pearcys. We will affirm the trial court's judgment.

## BACKGROUND

The issue in this case is whether an agreement to pay additional consideration for real property, with no stated term, is enforceable almost a decade after its execution.

The controversy finds its genesis in the proposed construction of a six-lane highway in Austin in the mid–1970s.[1] A group of women, alarmed that the highway would pass through the "Wild Basin" of Bee Creek, organized a movement to create a wilderness preserve in the area. They joined the Environmental Conservancy of Austin and Central Texas, Inc., and began to solicit owners of property in the Wild Basin to donate their land to the cause.

The Conservancy approached C.W. and Barbara Pearcy, who owned undeveloped land in the Wild Basin. Mr. Pearcy, an Austin condemnation lawyer, wanted to ensure that he and his wife received fair market value for their property. After lengthy negotiations, the Pearcys agreed to sell twelve acres to the Conservancy for $6,350 per acre, or $76,200. In connection with the sale, the Conservancy promised to pay the Pearcys additional consideration if it paid more per acre for either of two other tracts in the area than it paid for the Pearcy tract. The Conservancy executed an "Agreement to Pay Additional Purchase Price" (the "agreement") at the closing on October 29, 1976, promising to pay the Pearcys:

> the highest price per acre paid for either the F.C. Maseles or the Robert Brandes property, regardless of whether such property is purchased by the Conservancy or by another party or entity acting on behalf of the Conservancy or acquiring such property for the purposes of securing additional property for the "Wild Basin Park" to be ultimately conveyed to the appropriate governmental authority for use as a "public park."

The agreement was recorded in the deed records in Travis County.

Nine months after the Pearcy conveyance, the Conservancy purchased the Maseles property for $7,060 per acre—$710 more per acre than the Conservancy had paid the Pearcys. Pursuant to the agreement, the Conservancy remitted to the Pearcys $8,520 ($710 × 12 acres). The Conservancy attempted also to acquire the Brandes tract which, it had been discovered, actually belonged to Robert Brandes' mother, Marie Brandes. After several years of negotiations, the Conservancy abandoned its efforts because Marie Brandes wanted more than it was willing or able to pay.

Meanwhile, the Conservancy had been seeking a government sponsor so it could qualify for federal matching funds. The

1. The highway has since been completed and is known as Loop 360.

Conservancy contacted both the City of Austin and Travis County. It became apparent that the County was the appropriate entity because a portion of the proposed preserve lay outside Austin's city limits. On March 14, 1979, some two and one-half years after the Pearcy conveyance, the Conservancy donated all the land it had acquired, including the Pearcy property, to the County for the establishment of the Wild Basin Wilderness Preserve. The Conservancy then ceased its land acquisition activities and has since remained inactive.

The County soon realized that the preserve would have a private tract in the middle—the Brandes tract. After several futile attempts to persuade Marie Brandes to voluntarily convey her property, the County instituted condemnation proceedings. In 1985, some nine years after the Pearcy transaction, the County acquired the Brandes tract for $34,434.21 per acre.

Once the Brandes condemnation was final, the Pearcys sued the Conservancy, the County, and several individuals involved with the Conservancy for an additional $27,374.21 per acre (the difference between the $34,434.21 the County paid for each acre of the Brandes tract and the $7,060 the Conservancy paid for each acre of the Pearcy tract), or $328,490.52 ($27,374.21 × 12 acres). The Pearcys sought, in the alternative, an implied equitable lien in their former property and a judgment foreclosing the lien.

The trial court rendered an interlocutory summary judgment for the Conservancy and the individual defendants. Mr. Pearcy died shortly afterwards and Mrs. Pearcy continued the suit as plaintiff, both individually and on behalf of her husband's estate. After a bench trial of the Pearcys' suit against the County, the district court found the Pearcys' claims to be without merit and rendered a take nothing judgment in favor of all of the defendants.

## THE CONTROVERSY

Barbara Pearcy ("Pearcy") perfected an appeal of the trial court's judgment on her own behalf and not on behalf of the estate. Pearcy asserts that the trial court erred in rendering judgment in favor of the Con-

servancy and the County. (Pearcy does not pursue the claims against the individual defendants on appeal.) Specifically, Pearcy alleges a right to additional consideration or to an implied lien against the Pearcys' former property.

As to the County, Pearcy alleges it is liable under the agreement because, she contends, the Conservancy executed the agreement as the County's agent. If the agreement does not directly bind the County, Pearcy asserts an implied equitable lien against the Pearcys' former property, or entitlement to relief under the theory of unjust enrichment.

The County of course disputes these allegations. In addition, the Conservancy and the County argue that the agreement does not entitle Pearcy to additional consideration, based on the Brandes condemnation, because: (1) the condemnation did not satisfy certain express conditions of the agreement; and (2) the agreement contains no stated term and so either it is void because it violates the rule against perpetuities, or it expired before the condemnation.

We will address only the argument that the agreement expired before the acquisition of the Brandes tract, a condition precedent to the duty to pay additional consideration.

## DISCUSSION

### A. A Condition Precedent Must Occur Within a Reasonable Time

A condition precedent is an event the occurrence of which renders an obligation enforceable. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). In this case, the acquisition of the Brandes tract, at a per acre price greater than that paid for the Pearcy tract, was a condition precedent to the liability of the Conservancy and its alleged principal. The parties disagree as to whether the condemnation of the Brandes tract satisfied all of the express conditions of the agreement so that the obligation to pay additional consideration became enforceable. Assuming it did, we conclude that the Brandes acquisition did not occur within a reasonable time and, therefore, the agreement expired.

The agreement did not contain a termination date or limit the period during which the Maseles or Brandes acquisitions must have occurred for the Conservancy to be liable. Texas courts have repeatedly held that, where a contract does not provide a time for performance, the law will imply that performance must occur within a reasonable time. *KMI Continental Offshore Prod'n Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 243 (Tex.App.1987, writ denied); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 622 (Tex.App.1987, no writ); *Heritage Resources, Inc. v. Anschutz Corp.*, 689 S.W.2d 952, 955 (Tex.App.1985, writ ref'd n.r.e.).

■ What is a reasonable time depends on the facts and circumstances as they existed when the contract was formed. *Heritage Resources*, 689 S.W.2d at 955. Factors include the nature and character of the action and the difficulty of accomplishing it, as well as the purpose of the agreement. *Wade Contractors, Inc. v. C.W. & A., Inc.*, 589 S.W.2d 505, 507 (Tex.Civ.App. 1979, writ ref'd n.r.e.); *Krueger v. Young*, 406 S.W.2d 751, 756 (Tex.Civ.App.1966, writ ref'd n.r.e.). Where the material facts are undisputed, the question of what is a reasonable time is a matter of law. *KMI Continental Offshore Prod'n*, 746 S.W.2d at 243.

■ We believe these principles apply to conditions precedent. If performance must occur within a reasonable time, then conditions precedent, because they impose the duty to perform on obligees, must also occur within a reasonable time. This rule prevents the enforcement of contingent obligations, such as the one in this case, beyond a period reasonably within the parties' contemplation. We hold, therefore, that, where a contract does not specify a time during which a condition precedent must occur, the condition precedent must occur within a reasonable time.

**B. Nine Years was Not a Reasonable Time in This Case**

■ We next consider whether the condition precedent in this case—the acquisition of the Brandes tract—occurred within a reasonable time. We conclude that the nine years between the Pearcy transaction and the Brandes condemnation was not a reasonable time.

First, the nature and character of the entire Pearcy transaction indicate that nine years was not a reasonable time. In this regard, we note that the terms of other agreements in the transaction were substantially shorter than nine years. The Conservancy executed a promissory note to the Pearcys for a portion of the purchase price. The note was due two months later, in January 1977. The Pearcys received an option to repurchase their property if the preserve were not established by June 1977. The option expired in January 1978, a little over a year after the closing. No other agreement in the Pearcy transaction had a greater express term. Even if we double the term of the option, the agreement with the larger term, the extended period falls far short of nine years.

Second, the purpose of the agreement indicates nine years was not a reasonable time. The Pearcys requested the agreement to ensure they would receive fair market value, measured as the selling price of their neighbors' land. A necessary implication is that the Pearcys wanted the fair market value of their land as of October 1976. Because the value of land generally changes over time, a measure of fair market value based on sales price becomes inaccurate as time passes and a greater portion of the sales price reflects fluctuations in value.

In this case, the price of the Brandes tract in 1985 reflects more than the fair market value of land in the Wild Basin in 1976: it also reflects the appreciation of real property values in Travis County over the nine years between the Pearcy transaction and the Brandes condemnation. As time passed and real property values substantially appreciated, the agreement ceased to measure the fair market value contemplated by the parties and, therefore, it expired.

Pearcy asks us to presume that nine years was a reasonable time, arguing that the County and the Conservancy controlled

the timetable for the acquisition of the Brandes tract and so could delay until a reasonable time had passed. Pearcy has not alleged, however, that the County and the Conservancy in fact delayed the acquisition of the Brandes tract. Moreover, Marie Brandes also affected the speed with which her land was acquired. The County and the Conservancy attempted for years to negotiate with Ms. Brandes. They are not responsible for her refusal to compromise.

## CONCLUSION

For the above reasons, we hold, as a matter of law, that nine years was not a reasonable time for the acquisition of the Brandes tract. Accordingly, the Agreement to Pay Additional Purchase Price expired before the Brandes condemnation. Because all of Pearcy's claims are premised on the enforceability of the agreement, they are without merit. We overrule all of Pearcy's points of error and affirm the trial court's judgment.