**CHERCO PROPERTIES, INC., Appellant,**

v.

**LAW, SNAKARD & GAMBILL, P.C. and Calhoun & Stacy, f/k/a Calhoun, Gump, Spillman & Stacy, P.C., Appellees.**

No. 2–97–131–CV

Court of Appeals of Texas, Fort Worth.

Jan. 28, 1999.

Gary F. Deshazo & Associates, Gary F. Deshazo, Jerome J. Schiefelbein, Austin, for Appellant.

Law, Snakard & Gambill, P.C., Ed Huddleston, Dabney Bassel, Lynn Johnson, Barlow & Garsek, P.C., James Barlow, Shannon, Gracey, Ratliff & Miller, Kleber Miller, J. Wade Birdwell, Fort Worth, for Appellees.

Before DAY, DAUPHINOT, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

This appeal results from a judgment rendered in accordance with the terms of a written settlement agreement between the parties to this suit, Appellant CherCo Properties, Inc. (CherCo), and Appellees Law, Snakard & Gambill, P.C., (Law) and Calhoun & Stacy f/k/a Calhoun, Gump, Spillman & Stacy, P.C. (Calhoun). Because the trial court did not err in rendering judgment on the parties' settlement agreement and in granting summary judgment in favor of Appellees, we affirm.

## I. BACKGROUND

CherCo sued Appellees for legal malpractice for their work on a lawsuit involving several oil and gas wells in Cherokee County, Texas. On December 12, 1995, before the malpractice trial began, the parties announced to the trial court and in front of the jury that they had reached a settlement. That same day, the settlement was reduced to writing and signed by each party. The parties' written agreement, which was handwritten by CherCo's attorney, read in its entirety as follows:

*Parties:*

a) Calhoun & Stacey, P.C.

b) Law Snakard & Gambill, P.C.

c) CherCo Properties, Inc., & Ayers related companies

*Consideration:*

a) Calhoun & Stacey, P.C. pays CherCo $15,000.00

b) Law Snakard & Gambill pays CherCo $30,000.00 & returns CherCo's $ sanctions check of $5,560.00

c) All parties bear their own costs and attys fees

d) All parties execute mutual releases including a release of Ralph Ayers & related companies as to any and all claims

e) All parties agree to indemnify one another for any claims that could have been brought by through or under them

The agreement was dated December 12, 1995 and signed by representatives of CherCo and Appellees. Law returned the $5,560 sanctions check to CherCo that same day.[1]

On March 8, 1996, Law drafted a formal settlement document incorporating the terms of the agreement and sent it to CherCo for approval. CherCo, however, did not approve, and a flurry of correspondence ensued regarding additional terms the parties wanted to include in the final document. In May 1996, CherCo threatened to file a motion to enforce the agreement. Instead of following through on its threat, CherCo waited until September 13, 1996 and filed a motion to set the matter for trial on the jury docket, contending that the settlement had failed and it had withdrawn its consent to the agreement. CherCo also asserted that the written settlement agreement was unenforceable because it did not include a time for performance.

A week later, Law filed the parties' handwritten settlement agreement with the trial court. On November 8, Law sent another draft of the final agreement to CherCo and tendered payment of $30,000. Several days later, CherCo returned the check and notified Law that the formal agreement was still unacceptable and it was proceeding to have the matter reset for trial.

On December 18, 1996, Law filed a counterclaim alleging that CherCo had breached the written settlement agreement and asking the trial court to specifically enforce the agreement. On December 19, 1996—more than one year after the parties signed the settlement agreement—Law filed a motion to enforce the agreement or alternatively, a motion for summary judgment. Attached to the motion was the parties' handwritten agreement and evidence that CherCo had accepted the sanctions check returned by Law on December 12, 1995, and that Law had tendered a check for $30,000 to CherCo in November 1996 that CherCo refused to accept.

---

1. The trial court had assessed sanctions against CherCo for misconduct in connection with one of its witness's depositions.

After a hearing, the trial court found that no genuine issue of material fact existed and granted Law's motion to enforce. The trial court rendered judgment in accordance with the terms of the parties' December 12th agreement and assessed attorney's fees, future attorney's fees, costs, and pre-judgment interest against CherCo.

## II. THE SETTLEMENT AGREEMENT

In its first four points, CherCo contends that the parties' settlement agreement was unenforceable under Texas law and raises the following issues:

(1) What was the effect of CherCo withdrawing its consent to the parties' agreement?

(2) Did the omission of a time for performance render the agreement unenforceable (in other words, was time of performance a material term)?

(3) Was the trial court precluded from implying a reasonable time for performance?

(4) Under the circumstances of this case, was Law's performance within a reasonable time as a matter of law?

### A. Rule 11

▇▇▇ Under Rule 11 of the Texas Rules of Civil Procedure, no agreement between the attorneys or parties to a suit is enforceable unless it is in writing, signed, and filed with the papers as part of the record, or unless it is made in open court and entered of record. *See* TEX.R. CIV. P. 11. A settlement agreement must comply with Rule 11 to be enforceable. *See Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex.1995). To satisfy the "in writing" provision of Rule 11, the same contract principles apply that are used to determine when a "writing" satisfies the statute of frauds. *See id.* Thus, a Rule 11 settlement agreement is not enforceable unless it is complete within itself as to every material detail and contains all the essential elements of the agreement so the contract can be ascertained from the writing, without resort to oral testimony. *See id.*

### B. Applicable Case Law

▇▇▇ *Padilla* is dispositive in this case. In *Padilla,* the parties had exchanged a series of letters regarding terms of a settlement while a lawsuit was pending against Enrique Padilla. *See id.* at 455. Padilla contended that the letters represented a written settlement between the parties and asked the trial court to enforce the agreement. *See id.* at 457. The plaintiffs contended that there was no written agreement between the parties. Furthermore, plaintiffs argued, even if there had been an agreement, it could not be enforced because (1) they had withdrawn their consent before judgment had been rendered on the agreement, and (2) Padilla had failed to file the letters until after plaintiffs had withdrawn their consent. *See id.*

The Texas Supreme Court held that Rule 11 does not require a writing to be filed in the trial court before the other party withdraws its consent. Rather, the purpose of the filing requirement is satisfied "so long as the agreement is filed before it is sought to be enforced." *Id.* at 461. Moreover, regarding the plaintiffs' contentions that they were entitled to withdraw their consent to the agreement, the *Padilla* court explained:

> [Plaintiffs] confuse the requirements for an *agreed judgment* with those for an *enforceable settlement agreement.* Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but *rather is a judgment enforcing a binding contract.*

*Id.* (emphasis added).

Finally, the court noted that the letters between the parties constituted a settlement agreement because they contained all of the material terms of the agreement: an agreement to pay a specified sum of money in exchange for the settlement of all claims. *See id.* "Rather than requiring *actual* payment by a *particular* deadline, [the plaintiffs] accepted Padilla's *agreement* to pay...." *Id.* at 460 (first and second emphasis added).

The court thus held that Padilla's evidence established an enforceable settlement agreement as a matter of law. *See id.* at 462.

■ Likewise, although withdrawal of CherCo's consent to the agreement may have been fatal to an agreed judgment, it has no affect on Law's motion to enforce the settlement agreement as a contract. *See id.* In addition, under the facts of this case, a time for performance is not a material term, and thus its omission does not render the parties' settlement agreement unenforceable. The parties' settlement agreement contained all the material terms of the agreement: Law *agreed to pay* $30,000 to CherCo and return CherCo's sanctions check, and Calhoun *agreed to pay* $15,000 to CherCo, both in exchange for CherCo's release of liability. *See id.* at 461. Accordingly, the trial court did not err in impliedly holding that the parties' agreement contained all the material terms and CherCo's withdrawal of consent had no effect on the enforceability of the contract.

■ CherCo also argues that Law was required to tender the $30,000 as a condition precedent to CherCo's duty to sign a final settlement document. Furthermore, CherCo contends that the timeliness of Law's performance was a question of fact for the jury and that the trial court was precluded under *Tinney v. Willingham*, 897 S.W.2d 543 (Tex. App.—Fort Worth 1995, no writ) from implying a reasonable time for performance. Finally, CherCo argues that Law's contractual performance included the duty to tender a final settlement document that was agreeable to all parties. We disagree on each count.

■ Generally, where no time for performance is stated in a contract, the law will imply a reasonable time. *See Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Fitzsimmons v. Anthony*, 716 S.W.2d 719, 720 (Tex.App.—Corpus Christi 1986, no writ). What is reasonable depends on the facts and circumstances as they existed at the date of the contract. *See Solomon v. Greenblatt*, 812 S.W.2d 7, 15 (Tex.App.—Dallas 1991, no writ); *Heritage Resources, Inc. v. Anschutz Corp.*, 689 S.W.2d 952, 955 (Tex. App.—El Paso 1985, writ ref'd n.r.e.). Ordi-

narily, what constitutes a reasonable time is a question of fact, but when the facts are admitted or undisputed, then it becomes a question of law, which we review de novo. *See Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995); *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 702 (Tex.App.—El Paso 1993, no writ).

■ In this case, nowhere does the parties' written agreement state that Law's payment is a condition precedent to CherCo's performance. Indeed, it is clear from the parties' agreement and the facts and circumstances in existence at the time the agreement was signed that the parties contemplated contemporaneous performance, i.e., that Law would tender performance when CherCo signed a final release of liability. Moreover, CherCo's reliance on *Tinney* is misplaced because *Tinney* involved an agreed judgment, not a motion to enforce a settlement agreement. *See Tinney*, 897 S.W.2d at 544. Finally, Law's submission of final settlement documents that CherCo approved of was not a term of the parties' settlement agreement. Under the facts of this case, the trial court was entitled to imply a reasonable time for performance and determine that Law's performance was not untimely as a matter of law.

Because Appellees' uncontroverted summary judgment evidence established that the parties had entered an enforceable settlement agreement, the trial court did not err in granting Appellees' motion for summary judgment and in enforcing the settlement agreement. Accordingly, we overrule points one through four.

### III. FEES AND COSTS

■ In its fifth and sixth points, CherCo complains that the trial court erred in awarding fees, costs, future appeals fees, and post-judgment interest to Appellees. Under rule 38.1(h) of the Texas Rules of Appellate Procedure, every appellant's brief must contain a clear, concise argument in support of its contentions, including appropriate citations to authorities and to the record. *See* Tex. R.App. P. 38.1(h). By raising an issue and failing to present any argument or authority

on that issue, the party waives that issue. *See Patton v. Saint Joseph's Hosp.*, 887 S.W.2d 233, 246 (Tex.App.—Fort Worth 1994, writ denied) (construing former Texas Rule of Appellate Procedure 74(f)). Because CherCo's brief is devoid of supporting authority on either of these two points, it has waived the right to complain about these issues on appeal. Points five and six are overruled.

## IV. SANCTIONS

In point seven, CherCo contends that the trial court erred in granting sanctions against CherCo for failing to fully answer Calhoun's requests for admissions. We review the trial court's imposition of discovery sanctions under an abuse of discretion standard. *See Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); *Humphreys v. Meadows*, 938 S.W.2d 750, 751 (Tex.App.—Fort Worth 1996, writ denied). We will not disturb the trial court's ruling unless it acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In this case, before the parties reached a settlement, Calhoun served two sets of requests for admissions on CherCo. Many of the requests sought admissions about the conduct of Ralph Ayers, CherCo's sole shareholder, such as:

- Ralph Ayers participated in one or two of Expanding Energy's wells in 1984.
- Prior to the end of October, 1989, Ralph Ayers had engineering studies that indicated good reserves for the Cherokee County Wells.
- Ralph Ayers continued to invest with Expanding Energy after his first investment in the Cherokee County Property.

Some of the requests did not involve Ayers, such as request number 87: "Michael Turner did an economic analysis of the Cherokee County Property prior to October 1989." Nevertheless, CherCo objected to these and similar requests on the grounds that: (1) the requests sought an admission from Ralph Ayers, a non-party; and (2) the request sought an admission regarding the "knowl-edge, state of mind, intention, conduct or motivation of a non-party ... and, as such, exceed[s] the scope of Rule 169." Calhoun filed a motion to determine the sufficiency of CherCo's responses, alleging that they were evasive and incomplete. After a hearing, the trial court ordered Calhoun to clarify certain requests for admissions and ordered CherCo to respond, without further clarification, to forty of Calhoun's requests that CherCo had failed to answer. The court also ordered CherCo to pay Calhoun $1,000 in attorney's fees.

Rule 169 of the Texas Rules of Civil Procedure sets forth the response that may be given to a request for an admission. *See* TEX.R. CIV. P. 169. This rule provides that if a party does not admit a matter, it must specifically deny the matter, or set forth in detail the reasons that the answering party cannot truthfully admit or deny the matter. *See id.* Moreover, a party may not give lack of information or knowledge as a reason for failure to admit or deny unless it states that it has made reasonable inquiry into the facts and still has inadequate information to admit or deny the request for admission. *See id.* The rule also provides that the requesting party may move to determine the sufficiency of the responding party's answers, and that expenses incurred in relation to such a motion may be awarded in accordance with Rule 215.3 of the Texas Rules of Civil Procedure. *See id.* Under Rule 215.3 if the trial court determines that a party's response or answer in the discovery process is unreasonably frivolous or made for the purposes of delay, the court may impose any appropriate sanction, including attorney's fees. *See* TEX.R. CIV. P. 215.3.

In this case, Calhoun's requests for admissions were not directed at a non-party, as CherCo alleged, but were clearly directed at CherCo. Moreover, CherCo had an affirmative duty to make a reasonable inquiry into the facts—including questioning Ralph Ayers, if necessary—before answering the requests. *See* TEX.R. CIV. P. 169. Under the circumstances, we hold that the trial court did not abuse its discretion in ordering CherCo to respond to Calhoun's requests and pay

to Calhoun $1,000 in attorney's fees as sanctions. Point seven is overruled.

In its remaining points, CherCo attacks the trial court's award of sanctions in favor of Law, the terms of the trial court's revised scheduling order, and the trial court's rulings on the admissibility of CherCo's expert witnesses' testimony and expert witnesses' reports. Because we have determined that the trial court did not err in granting Appellees' motion to enforce the written agreement and motion for summary judgment, CherCo's complaints regarding its expert witnesses, the witnesses' reports, and the revised scheduling order are moot. Likewise, the issue of whether the trial court erred in awarding sanctions against CherCo and in favor of Law is also moot, because that check was returned to CherCo as a part of the settlement agreement. Points eight through thirteen are overruled.

## V. CONCLUSION

Having overruled CherCo's points on appeal, we affirm the trial court's judgment.