NO.
12-07-00258-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

ROY FRANKLIN EDMONDS,       §                      APPEAL FROM THE 321ST

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

MARTHA EDMONDS GRAY,

APPELLEE   §                      SMITH
COUNTY, TEXAS

 

                NO.
12-07-00270-CV

 

IN RE: ROY EDMONDS     §                      ORIGINAL
PROCEEDING

                                                                                                                                                           


MEMORANDUM OPINION

            Roy Franklin
Edmonds brings a parallel interlocutory appeal and mandamus proceeding
complaining of the trial court’s order appointing a receiver and awarding Roy
$6,000.[1]  In the interlocutory appeal, we affirm in
part and dismiss for want of jurisdiction in part.  We also conditionally grant Roy’s petition
for writ of mandamus in part and deny it in part.

 

Background

            Roy
and Martha Edmonds Gray were divorced on March 10, 2006.  In the agreed final decree of divorce and
contract, the parties agreed that the real property and house located on Lake
Tyler East (“Lake Tyler East property”) should be sold for a mutually agreed
upon price.  The net sales proceeds of
the Lake Tyler East property were to be divided as follows:  (1) one-half of the sales proceeds or the sum
of $600,000, whichever was greater, to Martha; (2) the sum of $150,000 to
Martha for her interest in real property awarded to Roy as his separate
property; (3) the sum of $22,550 to Martha, being one-half of the appraised
value of real property awarded to Roy as his separate property; (4) one-half of
the value of an annuity account to Martha, which account was awarded to Roy as
his separate property; and (5) the rest, residue, and remainder from the net
sales proceeds to Roy.  More
specifically, Roy was awarded the rest, residue, and remainder, if any, of the
sales proceeds from the sale of the Lake Tyler East property as his separate
property.  His portion was to be
determined in accordance with the above provisions pertaining to the sale of
the property. Finally, the trial court specifically reserved the right to enter
further orders to clarify and enforce the decree, including all relief afforded
by sections 9.001 through 9.014 of the Texas Family Code.  

            On
July 28, 2006, the trial court signed an agreed protective order, finding that
a threat of family violence had occurred and that a threat of family violence
was likely to occur in the future. In particular, the protective order
prohibited Roy from communicating in any manner with Martha except through his
attorney.  On October 26, 2006, Martha
filed a petition for enforcement of the property division and a motion for
appointment of a receiver and/or a judicial foreclosure of the owelty of
partition and lien created by the trial court to equalize the property
division.  In her motion, Martha alleged
that she and Roy could not agree on the terms of sale for the Lake Tyler East
property.  Further, she stated that,
unless a receiver was appointed immediately to take charge and control of the
property, the Lake Tyler East property would not be sold because of  Roy’s actions and omissions.  If the property was not sold, Martha states,
she would not receive the money awarded to her in the divorce decree.  Roy filed a general denial and a plea to the
jurisdiction alleging that it was beyond the power of the trial court to amend,
modify, alter, or change the substantive division of property approved in the
divorce decree. 








            On
May 8, 2007, the trial court held a hearing on the motion to appoint a
receiver.  Martha testified that she and
Roy had not been able to sell the property. 
Further, she stated that she had not been able to have any type of
communication or physical contact with Roy. 
The protective order against Roy was still in full force and
effect.  On cross examination, Martha
stated that the property was listed in January 2006 for approximately $1.3
million.  The Lake Tyler East property
included a 6,000 square foot house.  At
one point, she and Roy agreed to lower the list price to $999,999 for ninety
days.  Then, the price was to go back to
the original listing price.  However,
when the ninety day contract was up, Martha stated that she did not want the
listing price to be raised.  She admitted
that Lake Tyler was substantially below normal levels when the property was
initially listed for sale. Martha stated that she had no reason to believe that
the house was not in good shape or not being properly maintained.  She admitted that they had not had any offers
on the property.  According to Martha, the
realtor believed it was because of the housing market and the water level in
Lake Tyler. Martha stated that although the water level in Lake Tyler had
risen, the housing market was still down. 
She stated that the realtor believed the listing price should be lowered
to around $950,000. Martha stated that she wanted a receiver so that the
property would sell faster. 

            Jason
Gregory, the realtor for the Lake Tyler East property, testified that he did
not believe it was unusual for a house or property of this type to be on the
market for approximately eighteen months without an offer.  According to Gregory, this property was
representative of less than three percent of the market.  He stated that, out of six showings of the
house, five realtors did not like the nontraditional floor plan.  Although Gregory admitted the water level in
the lake was a problem in the past, he stated that the water level was close to
normal.  Gregory stated that the property’s
appraisal value was approximately $1.1 million. 
If he wanted to sell the house and property quickly, he would lower the
price to $999,000.  Although there were
no offers when the price was initially lowered to that amount, Gregory blamed
that on the lack of water in Lake Tyler. 
However, even at the lower listing price, he could not guarantee how
long the house and property would remain on the market.  If Gregory wanted to sell the property in
thirty days, the listing price would have to be lowered dramatically, such as to
the trial court’s suggested $750,000 listing price, or the property would have
to be sold at auction.  He admitted that
there was no reason the property could not be sold in the traditional manner,
but said that he could not guarantee when it would be sold. 








            Roy
testified that Lake Tyler’s water level directly affected the sale of the
property. According to Roy, selling the property within the next thirty days
was “very unreasonable.”  Further, he
stated that if the trial court ordered a “fire sale” of the property by a
receiver, it would be financially “devastating” to him and he would not get any
money.  Roy stated that they had an
opportunity to sell the house because Lake Tyler was only two feet below
normal.  He also stated that he was
paying $7,000 a month to maintain the property and that he was currently living
in the house.  Based on his knowledge of
properties in the area and the lake level, Roy believed that the property could
sell for close to the original listing price. 

            Danny
Burks, a broker associate with Coldwell Banker United Realtors in Tyler, Texas,
testified that the property was a “limited inventory” property, or one of few
such properties.  In order to sell
quickly, he stated, the house needed to be professionally furnished and
staged.  He believed that if the
decorations and furnishings that were in the house before Martha moved out were
restored to the property, the sales price would increase by two to seven
percent.  In Burks’s opinion, the lack of
furnishings along with the lake levels and the time of year may have combined
to delay the sale of the property. 
However, he agreed that eighteen months without a sale was a long
time.  He believed that if the property
were not staged, it would need to be listed below $1 million.  Further, Burks testified that sixty days
would not be a reasonable time in which to sell the property. 

            At
the conclusion of the hearing, the trial court granted Martha’s motion for
appointment of a receiver.  On June 22,
2007, the trial court signed an interlocutory order on the petition for
enforcement finding that it had jurisdiction over the subject matter and
parties in this case.  Further, the order
included findings that certain terms of the divorce decree were not specific,
that the trial court had the power to enforce the divorce decree pursuant to
section 9.001 of the Texas Family Code, and that the relief granted by the
court was authorized pursuant to sections 9.002, 9.006, 9.007, and 9.008 of the
Texas Family Code.  Thus, the trial court
ordered that a receiver be appointed and found that appointment of a receiver
was necessary to sell the property. 

            The
trial court also signed an interlocutory order appointing a receiver.  The trial court ordered the receiver to take
charge and exclusive use and possession of the property and sell the property,
as is, for the best price in no less than 180 days.[2]  Further, the trial court ordered that Roy
receive $6,000 “off the top” of the sale proceeds as reimbursement for
maintaining the property and that neither party initiate any contact or
communication with the receiver, ordering that all communication with the
receiver be made through the parties’ attorneys.  Finally, the trial court ordered that any
contract for sale be presented to the court through a receiver’s report of sale
and motion for confirmation.  Roy brought
a parallel interlocutory appeal and mandamus proceeding complaining of the
trial court’s order appointing a receiver and awarding Roy $6,000 as
reimbursement for maintenance of the property. 
We stayed the trial court proceedings pending our resolution of the
issues raised here.  We consolidate the
interlocutory appeal and the mandamus proceeding for purposes of this opinion.

 

Interlocutory
Appeal or Mandamus

            We
must first determine whether interlocutory appeal or mandamus is the
appropriate avenue for review.  Roy
argues in both proceedings that the trial court lacked jurisdiction to order
the appointment of a receiver.  He also
argues in both proceedings that the trial court lacked jurisdiction to award
him $6,000 as reimbursement for maintenance of the property.  Consequently, he concludes, the order is void
in its entirety.

            Mandamus
is an extraordinary remedy available to correct a clear abuse of discretion
when there is no adequate remedy by appeal. 
In re J.D. Edwards World Solutions Co., 87 S.W.3d 546, 549
(Tex. 2002).  However, if an order is
void, a relator need not show it did not have an adequate appellate
remedy.  In re Sw. Bell Tel. Co.,
35 S.W.3d 602, 605 (Tex. 2000).  

            As
a general rule, only final judgments are appealable.  Tex.
Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997).  One exception to this rule is an
interlocutory order “[appointing] a receiver or trustee.”  Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(1) (Vernon Supp. 2007).  However, we construe this statute strictly
because it “is a narrow exception to the general rule that only final judgments
and orders are appealable.”  Montgomery Cty. v. Fuqua, 22 S.W.3d
662, 665 (Tex. App.–Beaumont 2000, pet. denied)(quoting Tex. Dep’t of
Transp. v. City of Sunset Valley, 8 S.W.3d 727, 730 (Tex. App.–Austin
1999, no pet.)).  

            To
the extent that Roy challenges the appointment of a receiver, the trial court’s
order is appealable.  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1).
Accordingly, we review this portion of the order by interlocutory appeal.  The monetary award neither depends upon, nor
relates to, the appointment of a receiver. 
Therefore, the provision awarding $6,000 to Roy as reimbursement for
maintenance of the property is not within the parameters of appointing a
receiver.  Because this award is not one
of the interlocutory orders made appealable by section 51.014, mandamus is the
proper avenue for review.  Accordingly,
we review by mandamus the provision of the trial court’s order awarding $6,000
to Roy as reimbursement for maintenance of the property.

 

Appointment
of Receiver

            In
his first issue in the interlocutory appeal, Roy contends that the trial court
exceeded its authority in appointing a receiver, which renders void that
portion of the trial court’s order.  More
specifically, he argues that the trial court’s order appointing a receiver is a
substantive modification of the property division, and that the order to sell
the property in no less than 180 days defeats his property rights because his
portion of the sales proceeds will, in all likelihood, be reduced.  Further, Roy contends that the evidence is
legally and factually insufficient to support the appointment of a
receiver.  Martha disagrees, arguing that
the trial court had jurisdiction to enforce its decree by appointing a receiver
and that there was sufficient evidence to support the trial court’s exercise of
discretion as a matter of law to support the appointment of a receiver. 

Jurisdiction of Trial Court to
Appoint Receiver

            The
court that rendered the decree of divorce retains the power to enforce the
property division.  Tex. Fam. Code Ann. § 9.002
(Vernon 2006).  A court may render
further orders to enforce the division of property made in the decree of
divorce to assist in the implementation of or to clarify the prior order.  Tex.
Fam. Code Ann. § 9.006(a) (Vernon 2006).  However, a court may not amend, modify,
alter, or change the division of property made or approved in the decree of
divorce.  Tex. Fam. Code Ann. § 9.007(a) (Vernon 2006).  Such orders may more precisely specify the
manner of carrying out the property division previously ordered.  Dechon v. Dechon, 909 S.W.2d
950, 956 (Tex. App.–El Paso 1995, no writ). 

            Receivership
is an extraordinarily harsh remedy and one that courts are particularly loathe
to utilize.  Rusk v. Rusk,
5 S.W.3d 299, 306 (Tex. App.–Houston [14th Dist.]1999, pet. denied). However,
section 7.001 of the Texas Family Code grants a trial court broad authority to
divide marital property in a manner that it deems just and right upon the
dissolution of marriage.  Tex. Fam. Code Ann. § 7.001
(Vernon 2006); Rusk, 5 S.W.3d at 306.  That broad authority sometimes includes the
power to enlist the aid of a receiver to effectuate the trial court’s orders
and judgments. Rusk, 5 S.W.3d at 306-07. 

            In
this case, the trial court, as the court that rendered the divorce decree,
retained the power to enforce the property division. See Tex. Fam. Code Ann. § 9.002. Both
parties agreed in the divorce decree that the Lake Tyler East property would be
sold for a mutually agreed upon price. Further, Roy agreed that he would
receive the rest, residue, and remainder of the net sales proceeds, if any,
after the monetary awards to Martha were taken from the proceeds. Contrary to
his argument, Roy never agreed on a specific monetary award or, in fact, any
award at all from the net sales proceeds. Further, since the divorce decree,
the parties had been unable to sell the property and their relationship had
become governed by a protective order. As such, the trial court found that
appointment of a receiver was necessary to effectuate the sale of the property.
We cannot conclude that appointment of a receiver amends, modifies, or alters
the substantive division of property. See Tex. Fam. Code Ann. § 9.007(a). In this case, the
appointment of a receiver simply specifies the precise manner of carrying out
the property division previously ordered, i.e., the sale of the property. See
Rusk, 5 S.W.3d at 306; Dechon, 909 S.W.2d at 956.
Because the appointment of a receiver does not amend, modify, alter, or change
the substantive division of property in the divorce decree, the trial court had
the power to appoint a receiver.

Appointment of Receiver

            We
review an appointment of a receiver for an abuse of discretion. Sheikh v.
Sheikh, No. 01-05-01022-CV, 2007 WL 4387249, at *3 (Tex. App.–Houston
[1st Dist.] Dec. 13, 2007, no pet. h.). 
The test for abuse of discretion is not whether, in the opinion of the
reviewing court, the facts present an appropriate case for the trial court's
action. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241
(Tex. 1985).  Rather, it is a question of
whether the court acted without reference to any guiding rules and  principles. Id. at 241-42. In
other words, we must determine whether the act was  arbitrary or unreasonable. Id.
at 242. The mere fact that a trial court may decide a matter within its
discretionary authority in a manner different from that of an appellate judge
in a similar circumstance does not demonstrate that an abuse of discretion has
occurred. Id.  

            Under
the abuse of discretion standard, legal and factual insufficiency are not
independent reversible grounds, but are relevant components in assessing
whether the trial court abused its discretion. 
In re L.R.P., 98 S.W.3d 312, 313 (Tex. App.–Houston [1st
Dist.] 2003, pet. dism’d); Farish v. Farish, 921 S.W.2d 538, 542
(Tex. App.–Beaumont 1996, no writ).  In
making this determination, the reviewing court must view the evidence in the
light most favorable to the actions of the trial court and indulge every legal
presumption in favor of the judgment. Nordstrom v. Nordstrom, 965
S.W.2d 575, 578 (Tex. App.–Houston [1st Dist.] 1997, pet. denied); In re
S.B.C., 952 S.W.2d 15, 17-18 (Tex. App.–San Antonio 1997, no
writ).  If there is some evidence of a
substantive and probative character to support the judgment, the trial court
did not abuse its discretion. Nordstrom, 965 S.W.2d at 578; In
re S.B.C., 952 S.W.2d at 18.

            Because
the decree of divorce was agreed to by both Martha and Roy, its construction is
governed by the law of contracts.  Bishop
v. Bishop, 74 S.W.3d 877, 879 (Tex. App.–San Antonio 2002, no
pet.).  When construing an agreement
incident to divorce, a court must look to the intentions of the parties as they
are manifested in the written agreement. 
Id. at 879-80.  If a
contract is unambiguous, the courts will give effect to the intention of the
parties as expressed in the agreement.  Chandler
v. Chandler, 991 S.W.2d 367, 396 (Tex. App.–El Paso 1999, pet. denied).
Every attempt must be made to harmonize all the provisions within the
agreement.  Id.  A contract is ambiguous only if there is
uncertainty as to which of two meanings is correct and is a question of law for
the court.  Id. 

            Generally,
where no time for performance is stated in a contract, the law will imply a
reasonable time.  Cherco Prop.,
Inc. v. Law, Snakard & Gambill, 985 S.W.2d 262, 266 (Tex. App.–Fort
Worth 1999, no pet.).  What is reasonable
depends on the facts and circumstances as they existed at the date of the
contract.  Id.  Factors include the nature and character of
the action and the difficulty of accomplishing it, as well as the purpose of
the agreement.  Pearcy v. Envtl.
Conservancy of Austin and Cent. Tex., Inc., 814 S.W.2d 243, 246 (Tex.
App.–Austin 1991, writ denied).  Where
the material facts are undisputed, the question of what is a reasonable time is
a matter of law.  Id.

            Here,
both parties intended to sell the Lake Tyler East property as evidenced in the
divorce decree.  Since the divorce, the
parties had been unable to sell the property or garner any offers. Because
there was no timetable for the sale of the property in the divorce decree, we
will imply a reasonable time.  See
Cherco Prop., Inc., 985 S.W.2d at 266.  To determine what time is reasonable, we must
examine the relevant facts and circumstances on the date of the divorce decree,
the purpose of the agreement, the nature and character of selling the property,
and the difficulty in accomplishing the sale.  See Pearcy, 814 S.W.2d at 246.

            According
to the parties and two realtors, Gregory and Burks, there were a variety of
reasons for the delay in selling the property. 
First, the level of Lake Tyler East at the time of the divorce was
substantially below normal.  Second, the
housing market was down.  Third, the
floor plan of the house on the property was nontraditional and was
representative of only three percent of the housing market, or a “limited
inventory” property.  Gregory blamed the
lake levels for the lack of offers when the listing price was lowered in the
past.  Although the purpose of the
agreement was to sell the house and award Martha certain sums from the net
sales proceeds, the low lake levels, housing market, and nontraditional floor
plan made selling the property at the time of divorce extremely difficult. 

             Martha testified that she agreed to lower the
listing price in order to sell the house faster even though lowering the price
previously did not help sell the property. 
Burks testified that eighteen months on the housing market was a long
time, but stated that sixty days was not a reasonable time in which to sell the
property.  He also stated that, without
professional furnishings and staging, the house would not sell quickly.  Roy stated that a thirty day timetable was “very
unreasonable,” and believed that the property could sell for close to the
listing price.  Gregory and Martha agreed
that, in order to sell the property quickly, the listing price would have to be
lowered and, in Gregory’s opinion, dramatically lowered if the sale was to be
within thirty days.  Gregory also
admitted that there was no reason the property could not be sold, but he could
not guarantee when it would be sold. At the time of the hearing, the lake
levels were close to normal.  We also note
that the relationship between Roy and Martha had become governed by a
protective order, thus making communication between the parties without their
respective attorneys impossible. 

            At
the close of the hearing, the trial court ordered the receiver to sell the
property, as is, for the best price in “no less” than 180 days, or six months.[3]  Thus, the sale of the property was to take
place, at a minimum, two years after the divorce decree.  All parties agreed that the house could be
sold, even if the listing price had to be lowered.  Moreover, one of the major factors that all
parties agreed contributed to the lack of a sale, the low lake level, was no
longer regarded as a hindrance.  Even
accepting the difficulty of selling the house based on the initial low lake
levels, nontraditional floor plan, lack of furnishings and staging, and housing
market, a minimum of two years in which to sell the property after the divorce
seems reasonable.  See Cherco
Prop., Inc., 985 S.W.2d at 266. 
Because there was some evidence of a substantive and probative character
to support the trial court’s order appointing a receiver, the trial court did
not abuse its discretion.  See Nordstrom,
965 S.W.2d at 578; In re S.B.C., 952 S.W.2d at 18.  Accordingly, we overrule Roy’s first, second,
and third issues.

 

Monetary
Award

            In his
petition for writ of mandamus, Roy argues that the provision in the trial court’s
order awarding him $6,000 as reimbursement for maintenance of the property is a
substantive modification of the property division in the divorce decree.  Therefore, he concludes, the provision is
void for lack of subject matter jurisdiction. 


Award of $6,000 to Roy

            Mandamus is
not available absent an abuse of discretion by the trial court.  See In re J.D. Edwards World
Solutions Co., 87 S.W.3d at 549. A trial court abuses its discretion if
it reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A trial court has no
discretion in determining what the law is or in applying the law to the
facts.  Id. at 840.  Thus, a clear failure by the trial court to
analyze or apply the law correctly constitutes an abuse of discretion.  Id. 
Although a court may render further orders to enforce the division of
property made in the decree of divorce to assist in the implementation of or to
clarify the prior order, it may not amend, modify, alter, or change the
division of property made or approved in the decree of divorce.  Tex.
Fam. Code Ann. § 9.006(a), 9.007(a).  An order that amends, modifies, alters, or
changes the actual, substantive division of property made or approved in a
final decree of divorce is beyond the power of the divorce court and is
unenforceable. Tex. Fam. Code Ann. §
9.007(b). Section 9.007 of the Texas Family Code applies to a court’s subject
matter jurisdiction, and orders violating its restrictions are void.  Gainous v. Gainous, 219 S.W.3d
97, 107-08 (Tex. App.–Houston [1st Dist.] 2006, pet. denied). 

            The divorce
decree specified in great detail the division of the net sales proceeds of the
Lake Tyler East property, awarding Martha specific sums of money from those
proceeds first before awarding Roy “the rest, residue, and remainder, if any,”
of those proceeds.  The award of $6,000 “off
the top” of the sales proceeds to Roy as reimbursement for maintenance of the
property substantially modifies and changes the division of property made or
approved in the divorce decree.  See  Tex.
Fam. Code Ann. § 9.007(a). 
Therefore, the trial court abused its discretion in ordering the award,
and mandamus is appropriate.[4]

 

Conclusion

            Having
overruled Roy’s first, second, and third issues in his interlocutory appeal, we
affirm the trial court’s interlocutory order on motion for
appointment of receiver insofar as it pertains to the appointment of a
receiver.  Because mandamus is the proper
avenue for review of the award of $6,000 to Roy, we dismiss for want of
jurisdiction the portion of Roy’s interlocutory appeal pertaining to
the provision awarding $6,000 to Roy as reimbursement for maintenance of the
property.

            Because
Roy has an adequate remedy by appeal to challenge the portion of the trial
court’s order appointing a receiver, we deny Roy’s petition for
writ of mandamus insofar as it seeks an order compelling the trial court to
vacate this portion of its order. 
However, we conditionally grant Roy’s petition in part
insofar as it seeks an order compelling the trial court to vacate the portion
of its order that requires an award to Roy of $6,000 “off the top” of the sales
proceeds as reimbursement for maintenance of the property.  

            We
trust that the trial court will promptly vacate the portion of its June 22,
2007 order that awards $6,000 to Roy as reimbursement for maintenance of the
property.  The writ will issue only if
the trial court fails to comply with this court’s opinion and order within ten
days.  The trial court shall furnish this
court within the time for compliance with this court’s opinion and order, a
certified copy of its order evidencing such compliance.  Our stay of the trial court proceedings is
lifted.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

 

Opinion
delivered February 29, 2008.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1]  The
respondent is the Honorable Carole W. Clark, Judge of the 321st Judicial
District Court, Smith County, Texas.  The
real party in interest is Martha Edmonds Gray.





[2] In its oral pronouncement appointing a
receiver, the trial court ordered the sale of the property in “no more” than
180 days.  However, if there is a
conflict between oral pronouncements made by a trial court and its written
order, the matters set forth in the written order control.  See In re JDN Real Estate - McKinney
L.P., 211 S.W.3d 907, 914 n.3 (Tex. App.–Dallas 2006, no pet.)  Thus, the trial court’s stipulation that the
property be sold in “no less” than 180 days is controlling.





[3]
See footnote 2.





[4]  In
determining whether mandamus should issue, we need not address the second
prerequisite to mandamus, the availability of an adequate remedy by appeal,
because we have concluded that this portion of the trial court’s order is
void.  See In re Sw. Bell Tel. Co.,
35 S.W.3d at 605 (relator need not show that it has no adequate remedy by
appeal if order is void).  However, in
determining the proper avenue for reviewing this portion of the order, we
concluded that this portion of the order is not appealable.  Had we been presented with a petition for
writ of mandamus only, our consideration of appealability would have been
unnecessary.  See id.