

★ ★ ★      ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00627-CV

Monica **NOYES**,
Appellant

v.

George Carl **NOYES**,
Appellee

From the 218th Judicial District Court, Wilson County, Texas
Trial Court No. 06-09-0492-CVW
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed: August 12, 2009

REVERSED AND REMANDED

Monica Noyes appeals from the trial court's granting of George Carl Noyes's plea to the jurisdiction and dismissing her motion to enforce for lack of jurisdiction. We reverse and remand.

## BACKGROUND

Monica and George Carl Noyes were divorced on May 8, 2007. The final decree of divorce was signed by the trial court after Monica and George had agreed to a mediated settlement

agreement. By the terms of the decree, the mediated settlement agreement merged into the decree.

Further, the decree states that it is enforceable as a contract.

According to the decree, George was "awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:"

(1)     a home located at 146 Lakeview Road, Rockport, Texas;

(2)     a home located at 1423 Meadow Glen, Adkins, Texas, with the following legal description: "Lots 265 and 266, Unit IV, Whispering Oaks Subdivision, Wilson County, Texas";

(3)     all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment within his possession or subject to his sole control;

(4)     all clothing, jewelry, and other personal effects in his possession or subject to his sole control;

(5)     all sums of cash in his possession or subject to his sole control;

(6)     50% of his retirement benefits in Tim Smoot Electric 401(K), arising out of his employment with Tim Smoot as of May 2, 2007;

(7)     all policies of life insurance insuring his life;

(8)     all brokerage accounts, stocks, bonds, mutual funds, and securities registered in his name;

(9)     a 1986 Fleetwood Bounder motor home vehicle;

(10)    a 2002 horse trailer;

(11)    a 2002 Mahindra tractor;

(12)    a 2003 flatbed trailer;

(13)    a 1997 Proline 2700/Galv trailer;

(14)    a 1992 Freightliner with 1973 Lufkin motor vehicle;

(15)    a 1984 Wellcraft Scarab III vehicle;

(16)  a 2005 Explorer vehicle;

(17)  a 1992 S & H horse vehicle;

(18)  a 1973 Lufkin trailer vehicle;

(19)  a 1985 Yamaha D100;

(20)  a 1985 Suzuki Samurai vehicle;

(21)  a 1985 White Freightliner vehicle;

(22)  a 1978 Lufkin trailer vehicle;

(23)  a 2005 McClain boat;

(24)  the stock and any other interest in the business known as Master Marine Inc., including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business;

(25)  the business known as GCN Trucking, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business; and

(26)  a 2007 Chevrolet Corvette.

Monica was "awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim and in and to that property:"

(1)  real property described as "Lot 264, Unit IV, Whispering Oaks Subdivision, Wilson County";

(2)  all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in her possession or subject to her sole control;

(3)     all clothing, jewelry, and other personal effects in her possession or subject to her sole control;

(4)     all sums of cash in her possession or subject to her sole control;

(5)     50% of George's retirement benefits in Tim Smoot Electric 401(K), arising out of George's employment with Tim Smoot as of May 2, 2007;

(6)     a 2004 Chevrolet Tahoe;

(7)     $15,000, which was paid and accepted on May 4, 2007, and $10,000 payable by George on the date the trial court signed the decree; and

(8)     "$125,000 which is due by George Carl Noyes to Monica Noyes on the day he closes on the house located at: Lot 265, Unit IV, Whispering Oaks Subdivision, Wilson County, Texas. The same shall carry 7% interest on any monies remaining unpaid from and after November 1, 2007."

(9)     "Husband shall reimburse Ms. Noyes 1/2 of mon[]ies refunded by Bill Tiller and furnish to wife copies of any and all documents supplied to him by Bill Tiller."[1]

The decree also ordered George to appear at Monica's lawyer's office on July 1, 2007, and execute a special warranty deed for the property awarded to Monica. Similarly, Monica was ordered to appear at George's attorney's office and execute a special warranty deed for the property awarded to George.

Finally, the "Court expressly reserve[d] the right to make orders necessary to clarify and enforce this decree."

In February 2008, Monica filed a petition to enforce the decree, or in the alternative, to clarify the decree. In her amended petition, filed on April 21, 2008, Monica requested that the trial court enforce the divorce decree, alleging that George had failed to comply with the divorce decree

---

[1] Bill Tiller was appointed by the trial court in the divorce action to appraise two businesses owned by the community: Master Marine, Inc., and GCN Trucking.

because he had failed to sell the home located at Lot 265, Unit IV, Whispering Oaks Subdivision, Wilson County, Texas, and had failed to pay her $125,000 plus interest due. In the alternative, if the trial court considered the terms of the decree to not be sufficiently specific to enforce, Monica asked the trial court to clarify the terms of the decree by including language that the home be kept in "show condition," that the yard be maintained, that the home be vacant, that the house be listed at fair market value, that any reasonable offer be accepted, and that the home be placed into receivership and sold by the receiver. Monica also alleged that George had failed to give Monica copies of all documents given to him by Bill Tiller as ordered in the decree.

In response, George filed a plea to the jurisdiction, claiming that the trial court had no jurisdiction to modify the decree. After a hearing on George's plea to the jurisdiction, the trial court found that the decree is unambiguous and granted the plea to the jurisdiction. The trial court then entered findings of facts and conclusions of law. In its findings of fact, the trial court stated that "[n]o testimony or documentary evidence was presented by [Monica Noyes] or [George Noyes]." The trial court then made the following conclusions of law:

1. In the absence of an ambiguity, this court has no jurisdiction to enter a clarifying order.

2. The court has no authority to change, amend, modify, or alter the decree absent an ambiguity.

3. The divorce decree is not ambiguous, and therefore this court is without jurisdiction.

4. The divorce decree disposed of all right, title, and interest in the property involved.

5. Absent an allegation of a statutory or common law ground to vacate an arbitrator's award, a court is without jurisdiction to review the award.

6.   Petitioner Monica Noyes bears the burden of alleging facts that affirmatively show the trial court has subject matter jurisdiction.

### MOTION TO ENFORCE DECREE/PLEA TO THE JURISDICTION

On appeal, Monica argues that the trial court erred in granting George's plea to the jurisdiction and dismissing her petition for lack of jurisdiction. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject matter jurisdiction without regard to the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff bears the burden of alleging facts that affirmatively show the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

A court that renders the decree of divorce retains the power to enforce the property division. *See* TEX. FAM. CODE ANN. § 9.002 (Vernon 2006). Pursuant to the Family Code, a court may render further orders *to enforce* the division of property made in the decree of divorce to assist in the implementation of *or to clarify* the prior order. *See id.* § 9.006(a) (emphasis added).[2] However, a court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. *See id.* § 9.007(a). Here, Monica argues that in her petition, she was requesting that the trial court enforce or clarify the property division made in the decree. In contrast, George argues that Monica was asking that the court modify the property division made in the decree.

First, we note that the divorce decree specifically states the following:

---

[2] A trial court can render a clarifying order setting forth specific terms to enforce compliance with the original division of property if it finds that the original form of the division of property is not specific enough to be enforceable by contempt. TEX. FAM. CODE ANN. § 9.008(b) (Vernon 2006).

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract.

Thus, the construction of the decree is governed by the law of contracts. *See Bishop v. Bishop*, 74 S.W.3d 877, 879 (Tex. App.—San Antonio 2002, no pet.) (explaining that because the decree was agreed to by both parties, its construction is governed by law of contracts). When construing an agreement incident to divorce, we must look to the intentions of the parties as they are manifested in the written agreement. *Id.* at 879-80. If a contract is unambiguous, we will give effect to the intention of the parties as expressed in the agreement. *Chandler v. Chandler*, 991 S.W.2d 367, 396 (Tex. App.—El Paso 1999, pet. denied). We must make every attempt to harmonize all the provisions within the agreement, and each provision must be considered with reference to the whole agreement. *Id.*

Second, we note that under the section titled "Property to Wife," the decree states the following:

IT IS ORDERED AND DECREED that the wife, MONICA NOYES, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest and claim in and to that property: . . .

W-8 $125,000.00 Which is due by GEORGE CARL NOYES to MONICA NOYES *on the day he closes on the house* located at: Lot 265, Unit IV, Whispering Oaks Subdivision, Wilson County, TX. The same shall carry 7% interest on any monies remaining unpaid from and after November 1, 2007.

(emphasis added). Monica argues that this provision of the decree is missing the time by which George must sell the house in order to trigger her payment of $125,000. George responds that he is not required to pay Monica $125,000 until he decides to sell his home. Thus, George is arguing that

the decree did not order him to sell his home in order to pay Monica $125,000, but only that "in the event" he sold his home, he would have to pay Monica $125,000.[3]

In reviewing the decree as a whole, it is clear that the $125,000 payment awarded to Monica was a substantial portion of her settlement and that "on the day he closes on the house" contemplated that the house in question would be sold. Thus, we do not find George's argument that the provision was an "in the event" clause persuasive.[4]

Third, generally, where no time of performance is stated in a contract, the law will imply a reasonable time. *Edmonds v. Gray*, No. 12-07-00258-CV, 2008 WL 541673, at *6 (Tex. App.—Tyler 2008, no pet.); *Cherco Props., Inc. v. Law, Snakard & Gambill*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.). Here, even though the decree did not specifically state a date

---

[3] We note that we must decide whether the decree required George to sell the house and pay Monica $125,000 within a reasonable period of time or whether it merely required George to pay Monica $125,000 in the event he sold the house, because if the decree did require George to sell the home and pay Monica $125,000 within a reasonable period of time, then Monica's request to the trial court was one for enforcement, and the trial court had jurisdiction. On the other hand, if the decree merely required George to pay Monica $125,000 in the event he sold his home, then Monica's request to the trial court was, in fact, one to modify the decree, and the trial court would not have jurisdiction to consider her request.

[4] We note George's reliance on *Bishop v. Bishop*, 74 S.W.3d 877 (Tex. App.—San Antonio 2002, no pet.), which he claims is dispositive of this case. However, *Bishop* was clearly a case that ordered one spouse to be paid "in the event" the home was sold. In *Bishop*, the decree stated the following:

> 1. The property can be sold *at any time mutually agreed to by the parties and for a price mutually agreeable* to [Gregory and Shelley].
> 2. [Shelley] shall have the exclusive right to enjoy the use and possession of the premises. All maintenance and repairs necessary to keep the property in its present condition shall be paid equally (50/50) by the parties, including but not limited to the insurance policy covering breakdown and repairs of certain items in the house.
> 3. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:
>> At any time from May 20, 1998, until May 20, 2006 any net sales proceeds shall be distributed equally (50/50).
>> After May 20, 2006 net sales proceeds shall be divided proportionately to the amount of years paid of the mortgage by each party after May 20, 1998. For example, if the house was sold in August of 2010 the proportion would be 4/12 (33 1/3 %) for [Gregory] and 8/12 (66 1/6%) for [Shelley].

*Id.* at 879 (emphasis added).

by which George was required to close on the home and pay Monica $125,000, the law implies a reasonable time for George to do so within the decree. Thus, Monica's request that the trial court enforce the decree because George had not sold the house and paid her $125,000 within a reasonable amount of time was within the court's jurisdiction. In asking that the trial court enforce the decree's requirement that George sell the house and pay her $125,000 within a reasonable period of time, Monica was seeking enforcement, not a modification of the decree's division of property.

What is reasonable depends on the facts and circumstances as they existed at the date of the contract. *Edmonds*, 2008 WL 541673, at *6; *Cherco,* 985 S.W.2d at 266. Factors include the nature and character of the action and the difficulty of accomplishing it, as well as the purpose of the agreement. *Edmonds*, 2008 WL 541673, at *6; *Pearcy v. Envtl. Conservancy of Austin & Cent. Tex., Inc.*, 814 S.W.2d 243, 246 (Tex. App.—Austin 1991, writ denied). Where the material facts are undisputed, the question of what is a reasonable time is a matter of law. *Edmonds*, 2008 WL 541673, at *6; *Pearcy*, 814 S.W.2d at 246.

Thus, in *Edmonds v. Gray*, where the divorce decree ordered a property to be sold but failed to give a timetable for the sale of the property, the Tyler Court of Appeals implied a reasonable time. *Edmonds*, 2008 WL 541673, at *6. In determining what time is reasonable, the court examined the relevant facts and circumstances on the date of the divorce decree, the purpose of the agreement, the nature and character of selling the property, and the difficulty in accomplishing the sale. *Id.* Here, of course, no such facts were developed below because the trial court was of the opinion that it did not have jurisdiction.[5]

---

[5] We also note that George claims the trial court cannot order the sale of the home in question, because the home in question was his separate property. However, George did not appeal from the divorce decree.

In her petition to enforce, Monica also claimed that George had not given her a copy of all documents provided to George by Bill Tiller as ordered in the decree. The trial court clearly had subject matter jurisdiction to enforce the decree's provision that George give Monica a copy of all documents provided to him by Bill Tiller. Thus, the trial court had jurisdiction to consider whether George had complied with this provision of the decree.

Finally, in his brief, George requests that we award him damages because Monica has filed a frivolous appeal. We deny his request.

## CONCLUSION

We reverse the trial court's order granting the plea to the jurisdiction and remand the cause to the trial court for proceedings consistent with this opinion.

Karen Angelini, Justice